# Harrison, &c., v. Commonwealth.

1. THE PRACTICAL CONSTRUCTION GIVEN TO A STATUTE through a long period, and acquiesced in by all departments of the government, should control the court in construing it, even though that construction may contravene the letter of the law.

2. A STATUTE SHOULD BE CONSTRUED according to its equity, the object to be accomplished being considered.

Harrison, &c., v. Commonwealth.

3. COMPENSATION OF ASSESSORS.—The statute which allows the assessor fifteen cents "for each person's list of taxable property," entitles him to that amount for each "list" returned by him, whether it embraces property or not.

GOODLOE & ROBERTS FOR APPELLANTS.

1. An order of the county court allowing an assessor's claim is a judgment, and can not be collaterally attacked, the jurisdiction of the county court as to that matter being unlimited. (Commonwealth v. Cain, 80 Ky., 318; Jacobs' Adm'r v. L. & N. R. R. Co., 10 Bush, 369.)

2. The act of April 24, 1880, in so far as it attempts to authorize a collateral attack upon orders of courts allowing claims, is unconstitutional. (Cooley's Const. Limit., pp. 503, 504, and notes.)

3. It was the duty of the Commonwealth, through its authorized agents, to see that no more was allowed or paid the assessor than he was entitled to, and the surety of the assessor is, therefore, not liable for the excess paid. (Calloway v. Snapp, 80 Ky., 565.)

4. After the Auditor has passed a claim all questions of error and illegality are "closed out and concluded," and the claim can then be attacked only for fraud.

5. The act of calling on a person, swearing him and listing his name entitles the assessor to the compensation fixed by the statute, although the person "listed" has neither property nor family. This has been the practical construction placed upon the law for years, and it has been acquiesced in by all departments of the government. (2 Morehead & Brown, 1370, 1371, 1376, 1380; 3 Statutes of Ky. (Loughborough), pages 514, 519; 2 Revised Statutes, pages 248-9, 252, 253; General Statutes, chapter 92, section 8.)

6. The long continued practical construction of the statute should prevail. (Smith on Constitutional Construction, section 624, page 741; Warfield's Will, 22 Cal., 71; Barbour v. City of Louisville, 83 Kentucky, —; United States v. Moore, 95 U. S., 763; Bridgeford & Co. v. Newman, MS. Opinion, 1880; Pennington v. Woolfolk, 79 Kentucky, 19.)

7. A statute should be construed according to its equity and its reason, and not according to its *letter*.

ISAAC T. WOODSON ON SAME SIDE.

The practical construction placed upon the statute for such a long period, and acquiesced in by the law-making power, should control. (Surgett v. Lapice, 8 How. (U. S.), 71; United States v. Pugh, 99 U. S., 265, 269; United States v. Lytle, 5 McLean, 17; Maloney v. Mahar, 1 Mich., 26; McKeen v. Delancy, 5 Cranch, 22; Union Insurance Co. v. Hoag, 21 How. (U. S.), 35; Williams v. Dayton, 55 N. Y., 378; Story on Constitution, 408; Sparrow v. Kingman, 1 N. Y., 260;

Harrison, &c., v. Commonwealth.

Pratt v. Brown, 3 Wis., 609; Cooley's Const. Lim., page 65; 1 Kent's Commentaries, page 475; Yerger v. Allen, 1 Yerg., 376; Pennington v. Woolfolk, 79 Ky., 25; Commonwealth v. Whipps, '80 Ky., 280.)

THOMAS F. HARGIS AND T. L. BURNETT, OF COUNSEL FOR APPELLANTS, ARGUED ORALLY.,

Briefs not in record.

.P. W. HARDIN, ATTORNEY-GENERAL, AND HELM & BRUCE FOR APPELLEE, IN PETITION FOR REHEARING.

Brief not in record.

1. As to rules for the construction of statutes. (Boston v. Smith, Walker's Ch'y (Mich.), 395; Bosley v. Mattingly, 14 B. Mon., 73; U. S. v. Warren, 4 McLean, 460; Allen v. Mutual Fire Ins. Co., 2 Maryland, 120; Rex v. Poor Law Commissioners, 1 Neville & Perry, 375; Bartlett & Waring v. Morris, 9 Porter (Ala.), 258; Paulina v. U. S., 7 Cranch, 52; Barker v. Estey, 9 Vt., 138; Pierce v. Atwood, 13 Mass., 343; Nichols v. Wells, Sneed, 259; Manser v. Chester, 22 Pick., 387; Holbrook v. Holbrook, 1 Pick., 250; Evans v. Jordan, 9 Cranch., 203; Jarot v. Jarot, 2 Scam., 11; Weathers v. Stewart, Cain's Cases, 54; Way v. Cary, 1 N. Y. Term Rep., 191.)

2. As to the meaning of the word "property." (Conn v. Jones, Hardin, 8; Neyfong v. Wells, *Ibid.*, 562; Holbert v. Dearing, 4 Littell, 9.)

3. No instance can be pointed out where the words "taxable property," as used in the General Statutes, mean any thing except property from which taxes can be collected.

Fifty-seven instances cited where, as counsel contend, from the context of the section in which the words are used, the idea is excluded that any thing is meant except property from which taxes can be realized.

4. If the judgment is to stand reversed the court should remand the case, with directions .simply to overrule the demurrer to the answer, thus giving the plaintiff an opportunity to amend. (Bullitt's Code, section 133; Baker & Rubel v. Whipps, MS. Op., 6 Ky. Law Rep., 307.)

.JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The assessor of Jefferson county returned upon his books for 1883 a report, in accordance with the statutory form, as to 76,205 persons,. of whom only .21,232 owned any taxable property.

The number returned by him in 1884 was 78,343;. of whom but 21,871 had any estate; but the entire number returned for both years were either titha- bles or property owners, and the question is now, for the first time, presented to this court, whether an assessor is entitled, under the statute, to pay for each and every list taken by him, whether it em- braces property or not? Its decision involves the construction of the statute, which provides that "the amount allowed shall not exceed fifteen cents. for each person's list of taxable property, and the same shall be paid by the Treasurer upon the war- rant of the Auditor." (Gen. Stat., chap. 92, art. 5, section 8.) The form prescribed by it, and the blanks in accordance therewith which are furnished to the assessor, contain forty-five items as to which. the person being listed must make answer, under oath to be administered by the assessor; and he can not return any one as delinquent, without first ap- plying at his residence for his list; nor is he enti- tled to any compensation until he makes oath that the person "rendering the list" made oath to its. truth. It is urged, upon the part of the State, that a blank space, where the items of property are to be enumerated in case the person being listed owns. them, is not a "list of taxable property;" that. these words in the statute divest it of all doubtful import, and that they must be disregarded in order to allow the assessor pay for taking the list of one. who has no estate. Upon the other hand, it is as- serted that when the officer has taken the sworn statement of the person liable to pay tax, in ac-

cordance with the statutory form, that it is, in legal
contemplation, his "list of taxable property," al-
though, in point of fact, it embraces no property.
For instance, his name is first entered ; and even if
he has no property, yet the assessor must enter his
statement, upon oath, as to the number of his chil-
dren, if any, between six and twenty years of age,
and the other items or information as required by
the form ; and it is insisted that when this has been
done, it is his "list of taxable property," within the
meaning of the law.

A brief review of the former legislation upon the
subject, and the light in which it has been regarded
by those charged with its execution, will aid in ar-
riving at a correct conclusion.

The form for the list, prescribed by the act of
January 13, 1814, enumerated twenty-two items ;
and by the act of February 2, 1819, entitled "An
act to alter the mode of taking in *lists of taxable
property*," and in the body of which is found the
expression "list of taxable property," the commis-
sioner of tax, as the assessor was then called, was
allowed such compensation as the county court
might see proper to certify to the Auditor.

This was changed by the act of January 29, 1829,
which, like the present law, provided "that it shall
be the duty of such commissioners to apply at the
residence of every individual in his county or dis-
trict, liable to taxation, for his *list of taxable prop-
erty*," and allowed not exceeding five cents for each
list taken by "the commissioners of *taxable prop-
erty*."

By the act of January 4, 1840, entitled "An act to change the form of the commissioners' books of *taxable property*, and to regulate the duties of the commissioners of tax, and other officers, in relation to the same," a new form, containing twenty-nine items, was provided; and it, by way of illustration, gives the names of supposed persons and their lists, and the last one named is "Peter Mosby," whose list is an entire blank, save the statement that he is a white male, over twenty-one years of age, and has six children between seven and seventeen years of age. By an act approved March 3, 1842, it was provided that the county courts should make allowances to "commissioners of *taxable property*" of not more than eight cents for each list; and by the Revised Statutes, adopted in 1852, the same pay was allowed for "each list of *taxable estate.*" They also prescribed a new form of assessment, of thirty-five items, and interchangeably speak of it as a list of "taxable property" or "taxable estate;" and section 14, article 6, chapter 83, required the person giving the list to enumerate, as a part of it, the estate owned by him, and taxed in any other State. The General Statutes, adopted in 1873, provide still another form, and which is the one now in force, and which furnishes to the State, when returned by the assessor, much valuable information, aside from taxation. By it the number of voters; the number of children between six and twenty years of age; and many other facts necessary to the existence of the State, and the proper conduct of its affairs, are ascertained; and this list is repeatedly spoken of in

the statute now in force, as it was in the previous.
ones, as the "list of taxable property."

The expression read in the light of all the pre-
vious legislation leads to the conclusion that the al-
lowance to the assessor does not depend upon the
property returned, but upon the taking of the list;
and that the entry of the name of Peter Mosby
and his six children, as prescribed in the act and
form *supra*, in which he is mentioned, and which
relates to "*taxable property*," constituted his "list
of taxable property," within the meaning of the
law. Again, if this be not so, and the pay is to
depend upon property being returned which will
add to the State's revenue, then, in case an assessor
under the provision of the Revised Statutes, pro-
viding that a person should list his property situ-
ated in, and taxed by, another State, had taken the
list of one who had no other property, yet he would
not have been entitled to any pay for it, because it
was not subject to taxation in this State, and no
benefit, by way of taxes, would have been obtained
save the poll-tax on the tithable. It would seem
from this that it is not the items embraced in the
list, but the taking of it, which gives the right to
compensation, and that it is based upon the lists.
and not the items in them. Technically speaking,
it requires more than one item to make a list, and.
yet it will hardly be claimed that an assessor is not
entitled to pay for taking one which contains no
property, save one tract of land worth thousands.
of dollars; and yet, in a strict sense, this would.
not be "a list of taxable property."

In construing a statute the object to be accomplished must be considered. In this instance it is to obtain the sworn statement of the person liable to taxation as to his property, and the other information required by the law. He may not own any taxable estate, but he must state, on oath, whether his statement is true. It can not be said that if one has no property that the oath should not be administered to him, or that if he refuses to take it or disclose his condition as to property, that he is not liable to a penalty.

When his sworn statement has been obtained, its truth or falsity may, under the law, be otherwise ascertained; and it should not be presumed that the Legislature, in enacting the law, relied for a faithful performance upon the part of the assessor upon the character or amount of his compensation, which, at most, is inadequate, instead of his oath of office and the bond he is required by law to execute. If so, and his compensation is to depend entirely upon the property returned, then, with equal force, it can be contended that he would neglect his duty in obtaining the other information required by law, and which is highly important to the State, and yet does not relate to property. But let us return to the meaning of the expression, "list of taxable property," as used in the statute, and suppose that one of the citizens of Louisville should contract with its mayor to ascertain the taxable property of each citizen living upon Jefferson street, at the price of ten cents for each list. Now, would it be any answer to the claim for compensation

that the mayor was not bound to pay for the list of those who, upon investigation, appeared to own no property? Certainly not, because this would not accord with the meaning of the contract or the intention of the parties. Here the State has said to the assessor, if you ascertain each man's taxable property in your county you shall have not exceeding fifteen cents for each person's list; but it is claimed that when he applies for his compensation he must be told that, although you applied to A for his list, and he was subject to taxation, yet, as he rendered a return of *nulla bona*, and you made the same return to the State, you have no claim for taking the list.

But although this question is *res integra* in this court, yet it is not required by its opinion to establish a practical construction of the statute. The very fact that persons, and even courts, are differing as to its meaning, tends strongly to show that it is, at least, of doubtful import. It is alleged in the answer, and admitted by the demurrer to it, that the State, through its county courts and its executive department, has, for many years, allowed and paid for each list, whether it embraced property or not. The executive branch of a government must necessarily give a construction to the laws which it must execute; and if its construction has been followed for years and in view of, and without interference by, the law-making power, then such contemporaneous and long continued construction should not be departed from without the most cogent reasons. A long continued practice under a

Harrison, &c., v. Commonwealth.

statute, under such circumstances, ripens into an authoritative construction of it. The law, in its regard for the public good, goes so far, in some cases, as to hold that *communis error facit jus;* but courts should be slow to set up a misconception of the law as the law, and there is no need of it in this instance; but it is proper to regard a long continued *communis opinio* in construing it. The object of construction is to give effect to the legislative intent. Its *will* and not its *words* are the law. In the language of the Supreme Court of the United States, in the case of the United States v. Moore, 95 U. S., 763, "a thing may be within the letter of a statute, and not within its meaning; and it may be within the meaning, though not within the letter," and the *meaning* and not the *letter* must control.

A case within even the reason, but not the letter of a remedial statute, is embraced by it. Admitting, for argument sake, that the *letter* of the statute under consideration does not allow the assessor any pay for a list which does not embrace property, yet the legislative meaning has been placed beyond question by the action of the State. It was said by Chief Justice Marshall, in the case of Cohens v. Virginia, 6 Wheaton, 418, that "great weight has always been attached, and very rightly attached, to contemporaneous exposition," and this rule is so well settled that citation of authority is needless. Not only those claiming rights under the law now in question, but the county courts of the State, and those who have had charge of its ex-

ecution have, for over a half a century, interpreted
it otherwise; and while this was being done the va-
rious Legislatures, and the people behind and over
them, have known of it and recognized it by fail-
ing to interfere. They have, in fact, not only rati-
fied it by their silence, but by their action. Knowing
the practical construction which was being put upon
the provision of the statute, as contained in the Re-
vised Statutes of 1852, the Legislature re-enacted it
in equivalent and nearly the same language in the
one now in force, thus virtually re-enacting that
construction; giving it the force of a positive law,
and placing beyond question that it was the one
intended by the law-making power. Judicial pre-
cedent or exposition could not give greater sanctity
to it; and as the language of the statute and the
legislation upon the same subject, in force prior to
its enactment, render it, at least, of doubtful import,
we can not doubt, in view of the long continued leg-
islative, executive and judicial action as to it, that
the interpretation placed upon it by the lower court
is incorrect. It is urged that if the pay of the as-
sessor be insufficient, yet that this is a matter for
legislative consideration. This is conceded, but yet
every statute should be construed according to its
equity, and it must be assumed that the Legisla-
ture intended to give a fair compensation for the
services to be rendered; and if the view now taken
by the State of the statute were to prevail, then the
assessors would, by no means, receive a compensation
adequate to the labor required of them; and this is
an argument against the soundness of the position,

Harrison, &c., v. Commonwealth.

and leaves little room to doubt the wisdom of the construction which has been followed for so many years, undisturbed by legislative or judicial action. It takes the assessor of Jefferson county and his nine assistants, each furnishing a horse, six months to assess the county, and if only allowed for the lists which embrace property, they would each receive but about three hundred dollars. The pay of the assessors of other counties would be still more inadequate, and especially so in the sparsely settled ones. Moreover, the proportion between those who own taxable property and those who have none, would vary greatly in different counties, and there would be little uniformity in the compensation for the labor.

In this instance the assessor, in accordance with the long continued practice, has received his pay for each list, whether it embraced property or not, and has disbursed the most of it to his assistants; and the legislative intention, shown by a long continued practical construction under the act, ought not to be defeated by a decision of this court, even admitting that it would accord with the letter of the law. The demurrer to the answer of the appellants reached back to the petition, and it should have been dismissed; and the judgment is reversed, with directions to do so.