## Commonwealth, on Relation, et al. v. Kentucky Distilleries & Warehouse Co.

Appeal from Jefferson Circuit Court

(Common Pleas Branch, Third Division).

## Commonwealth, on Relation, et al. v. The Tom Moore Distillery.

Appeal from Nelson Circuit Court.

## Commonwealth, on Relation, et al. v. Thompson, et al.

Appeal from Mercer Circuit Court.

(Decided April 25, 1911.)

1.  Revenue and taxation—Assessment of distiller's storage accounts.
    —Distillers that sell whiskey, and issue warehouse receipts therefor, charge for storing the whiskey five cents per barrel per month as long as the whiskey remains in the bonded warehouse. This claim for storage is a lien upon the whiskey and is property of value, subject to assessment and taxation.

2.  Revenue agents—Sufficiency of description of omitted property.—
    The statement filed by the revenue agent must describe the property so that it may be identified; and charge that the taxpayer owns the property sought to be assessed and that he has failed to list it for taxation.

3.  Articles or things that must be assessed.—Only such property of value can be taxed as is embraced in the schedule of assessable property, etc.

4.  "Property"—Meaning of.—The term "property" embraces every

species of valuable right and interest, including real and personal property, easements, franchises and hereditaments; and, as used in the revenue statute, it includes everything of value that a person owns that is or may be the subject of sale or exchange, or that when offered for sale will bring some price.

5. Accounts—Property.—Any existing enforcible, collectible demand that one person has against another, or against property upon which it is a lien and out of which it can be collected, is property.

6. Same.—It is not necessary to constitute an existing account or evidence of debt property that the owner of it should have a right to enforce its collection from some particular person or that some particular person should have assumed an obligation to pay it. Nor is the fact that the demand is not due of controlling importance. The fundamental question in ascertaining and determining whether it is property of value, is—has the owner of it the legal right to enforce its collection and is it collectible?

7. Same.—The fact that the value of the account may be destroyed before it is collected does not affect the right to assess it at its value while it is an existing demand and before the contingency arises that deprives it of its value.

8. "Account" defined.—An account is an existing enforcible or collectible claim or demand, not evidenced by writing signed by the person to be charged, and that arises out of or originates in a contract express or implied; but, it is not indispensable to the existence of an account that it should be owing by a particular person if in fact it is a sum of money arising but of a business transaction that a designated person has a legal right to collect and that is a claim against or lien upon property of value out of which it can be collected.

9. Articles of property that are assessable.—The statute in a list of descriptive items mentions the articles of property that are subject to taxation, and then provides that all other property not mentioned in these items shall be stated in a separate column; and so, when any item of property is not embraced by one of the descriptive items in the schedule, it is assessable under the item "value of all other property not mentioned above."

10. Storage accounts not income or rent.—Storage accounts that are assessable at the assessing period are accrued and not accruing accounts; and it is the earned and accrued charge that is the subject of assessment and not the storage that may be earned in any succeeding year.

11. Contemporaneous construction of statute.—The rule of contemporaneous construction can only be invoked when it is made to appear that there has been in fact a construction given to a statute by public officials charged with its construction and execution, and this construction has been acted upon for a series of years in administering the law so construed.

12. Situs of personal property for taxation.—Storage accounts due by a foreign distillery corporation that owns and operates distill-

eries in this State at which these accounts originated, and that manages and controls the distilleries by its agents in this State, and that retains in this State the whiskey upon which there is a lien for the storage, have a situs for taxation at its place of business in this State.

JOHN F. LOCKETT, CHAS. H. MORRIS, BEDFORD CHERRY, A. SCOTT BULLITT, JOHN L. SULLIVAN, ROWAN HARDIN and RODNEY W. KEENON for appellants.

JNO. S. KELLEY and J. SMITH    BARLOW for Tom Moore Distillery.

WM. MARSHALL BULLITT, KEITH L. BULLITT, BRUCE & BULLITT, for K. D. & W. CO., TYLER BARNETT, CHAS. H. GIBSON, T. M. GILMORE, JR., JOHN B. THOMPSON, et al., for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

These three cases involving except in a few particulars that will be pointed out, the same questions of law and fact may be disposed of in one opinion.   In each case the proceeding was instituted by a revenue agent on behalf of the Commonwealth, seeking to assess as omitted property what are called ''distiller's storage accounts.'' The appellees are distillers engaged in the manufacture of whiskey, and it is admitted that the storage accounts sought to be assessed have never been listed for taxation. A number of reasons are presented by counsel for appellees why these accounts should not  be  assessed,  even should it be conceded—although it is  denied—that  the proceedings instituted were sufficient in form  and  substance to authorize their assessment as omitted property. The accounts sought to be taxed are created in this way: under the United States internal revenue law the distiller is compelled to furnish warehouses for the storage of all whiskies that may be manufactured by him, he being allowed to carry in bond without payment of the government tax all of such whiskies for a period of eight years, unless sooner demanded by the owner of the whiskey or voluntarily withdrawn by the distiller, if he is the owner. The whiskey is kept under the direct supervision of the government during the bonded period of eight years, or until it is withdrawn from the bonded warehouse, which it may be at any time upon the payment of the tax due the United States government, and at the end  of  the

bonded period or when the whiskey is withdrawn, this tax must be paid. If the distiller does not withdraw the whiskey before the expiration of the eight years bonded period and pay the tax, the government sells the whiskey and after deducting the amount of the taxes, retains the balance of the proceeds of sale for the benefit of the holder of the warehouse receipt, if the whiskey has been sold, or the distiller if it has not. The United States government has estimated from carefully prepared experience tables that each barrel of whiskey will lose by evaporation, bad cooperage and other causes a certain number of gallons of whiskey each year that it is in the bonded warehouse; and so, when the tax comes to be paid, the person paying the tax is allowed credit by the whiskey so lost, and on this is not required to pay any tax. The distiller may of course retain the ownership of the whiskey manufactured by him and placed in these bonded warehouses, but it is customary for the distiller to sell the whiskey while it is in the bonded warehouses and issue warehouse receipts for the same. These warehouse receipts differ in some particulars, but the terms and conditions in all of them are substantially alike, and the following may be taken as a sample:

RECEIVED IN OUR DISTILLERY BONDED WAREHOUSE, NO. ————, situated in ———— in the Fifth District of Kentucky, FIVE BARRELS of ————WHISKEY, To be held by us on storage and for account of and subject to the order of———— ———————— Deliverable only on payment of the United States taxes on or before the date when due, according to law, and the Kentucky Statute, county and all other taxes, and storage on said whiskey and on the return of this Receipt with the written order of the holder hereof. The holder of this Receipt, in accepting it, agrees to furnish the money to pay all taxes on the whiskey for which this receipt is issued, on or before the date said taxes become due, and failing to do so, all said whiskey may, without notice, be sold for the payment of said taxes, and all penalties, costs, warehouse and other charges. Storage five cents per bbl. per month from date of original inspection. * * *

It is hereby guaranteed that the loss by natural evaporation and on account of defective cooperage on each and every barrel of this whiskey shall not be more than

one gallon in excess of the government allowance during the first seven years of the bonded period, and shall not be more than sixteen gallons at the expiration of the eighth year of the bonded period.  \*  \*  \*

This warehouse Receipt is given subject to the warehouse laws of the State of Kentucky, and the laws of the United States in force at this date.

           . . . . . . . . . . . . . . . . . . . . . .

(Signed by the distiller)

The laws of Kentucky defining and regulating warehousemen, found in the Kentucky Statutes in sections 4768-4780, give to the distiller as a warehouseman a lien upon the whiskey for the charges due to him, and the right to sell the same for the purpose of paying the charges. So that both by the terms of the receipt and the provisions of the statute the distiller is fully protected in the payment of any charges for storage that he may have against the whiskey in his bonded warehouses for which warehouse receipts have been issued. As the warehouse receipts are negotiable and transferable, the distiller does not necessarily know who is the owner of the whiskey described in the receipt until the receipt is presented and the whiskey demanded. When the receipt is presented and the whiskey represented by it demanded, the distiller has the right to require before delivering the whiskey payment of all taxes and storage fees on each barrel chargeable against it; and if the owner of the warehouse receipt fails to do this, or if he should fail to present the receipt and demand the whiskey when under the United States government law, the whiskey must be withdrawn from the warehouse and the tax paid, the distiller who must then pay the government tax or let the whiskey be sold to pay it has a lien upon the whiskey to re-emburse him for any amount paid, as well as to secure him in the payment of storage fees due, and may sell the whiskey to satisfy his lien. With this preliminary statement of fact, we will take up and discuss the various reasons presented by counsel for appellees why these storage accounts should not be assessed.

The first contention is that the statements filed by the revenue agent were not sufficient under the statute to sustain the proceedings. The statements in each case set out in substance that the distiller proceeded against

was on September 1st, ———, the owner of accounts or credits liable for taxation, to-wit:    storage    accounts against whiskey in barrels in bonded warehouses,    setting out the date when the whiskey was    manufactured, the number of barrels in the bonded warehouse, the number of years each barrel had remained in the warehouse, and the amount of the storage at five cents per month per barrel chargeable against the whiskey by the distiller at the time it was averred these accounts were omitted from assessment.    The following may be taken as a sample description of the property as set out in the statement.

| When Whiskey Mfg | No. Bbls. in Storage, Sept. 1, 1905. | No. Years in Warehouse. | Value Storage Sept. 1, 1905, at 5c per mo. per bbl. |
|---|---|---|---|
| Sept. 1, 1897, to Sept. 15, 1898. | 73 | 5 | $219.00 |

It is insisted that the statement is not sufficient    because it does not describe the whiskey, or give the name of the owner of the warehouse receipt or    the    person chargeable with the payment of the storage, or aver that the distiller was the owner of storage accounts against any person, firm or corporation, or that any person, firm or corporation owed the distiller any storage accounts, or state when the storage would become or be due and collectible.

Section 4260 of the Kentucky Statutes, relating to the assessment of omitted property by revenue agents, provides that—

"The officer proposing to have the property assessed shall file in the clerk's office of the county in which the property may be liable to assessment, a statement containing a description and value of the property proposed to be assessed,    *    *    *    but no judgment by default or otherwise shall be rendered against such alleged owner unless the statement filed shall contain such a description of the property sought to be assessed as will enable the court to identify it."

In Commonwealth v. Glover, 132 Ky., 588, Judge Lassing writing for the Court, delivered an exhaustive opinion on this subject.    In that case    the    revenue    agent sought to assess among other things "Cash    on    hand,

$600.00; Accounts, $8,000.00; Library, $500.00; Pictures, $500.00; Jewelry, $250.00; Household effects, $2,000.00. In the course of the opinion it is said:

"Under the provisions of this act, two things must appear before the revenue agent can proceed with hope of success; First, that the taxpayer owns certain property; and, second, that he has failed to list it. Now, if the agent is not able to describe the property, his information in regard thereto must be very meager, and such information is in the language of the statute too meager to authorize even a default judgment. This statutory provision is not directory, as suggested by appellant, but it is mandatory, and was enacted to subserve a most useful purpose, and, while there is much reason in the argument of appellant that the 'statement' should not be required to be more explicit than the schedule which the taxpayer is required to make out for the assessor, we are of opinion that this is a matter which properly addresses itself to the legislative department of government, and that neither revenue agents nor courts may properly concern themselves with either the wisdom or policy of the statute.   *  *  *  So accepting and applying its provisions to the case under consideration, we find that the trial judge held that certain items, to-wit, 'Cash on hand,' 'Household effects,' 'Library,' 'Pictures,' and Jewelry were sufficiently described so as to enable the court to identify same, and, as the fair taxable value of each of these items was set out, the court held, and properly so, that the 'statement' as to these items conformed to the requirements of the law, and he overruled appellee's motion that the 'statement' in regard to such be made more explicit.   *  *  *

'We are at a loss to understand how the agent could charge that appellee was the owner of accounts of a stated value, and not be able to state from whom such accounts were due and owing, and the amount owing by each. The fact that he refused to so state was evidence that he could not do so, and was simply pursuing the 'dragnet' policy which the Legislature sought to condemn by the enactment of the very law under which appellant was proceeding.''

While fully approving all that is said in this opinion, as to the necessity for a reasonably accurate description of the property sought to be assessed, we are nevertheless satisfied that the statement filed by the revenue agent

sufficiently described the "storage accounts" sought to be assessed. It gave the date when the whiskey was manufactured and placed in the warehouse, the number of years it was kept in the warehouse on storage, and the amount of storage chargeable against it. It would be difficult to furnish a statement containing data more specific. If the distiller had voluntarily furnished the revenue agent a statement of the amount due him on account of storage, it is doubtful if he could have furnished a more definite statement than the one set out by the revenue agent.

It is true the statement does not give the name of the owner of the warehouse receipts or the person chargeable with the storage, or charge that the distiller was the owner of storage accounts against any person, firm or corporation, or that any firm, person or corporation owed the distiller any storage accounts, but, if "storage accounts" are a proper subject of taxation, the name of the owner of the warehouse receipts or the person who must pay the storage when the whiskey is withdrawn is wholly immaterial. It is doubtful if the distiller could name at any time after the warehouse receipt passed from his custody the owner or holder of it or give the name of the person who might by presenting it and demanding the whiskey be required to pay the storage, or tell when it would be paid or the amount that would be paid, or furnish a more specific statement than the one made out by the revenue agent. We think it clear that the revenue agent should not be required to give a more accurate description of the property sought to be assessed than the taxpayer if called on could give. The distiller is sought to be made liable for the tax on these accounts, not because any particular person owes him the storage but upon the ground that he has in his custody property upon which this storage is a lien and that must be paid before he can be required to surrender the article. It is immaterial to the distiller who is the owner or holder of the warehouse receipt. He does not look to any particular person for the payment of the storage, but to the whiskey upon which it is a lien. The statement could not have charged that the distiller was the owner of storage accounts against any person, firm or corporation, or that any person, firm or corporation owed him any account because the account is not against any particular person,

nor is any particular person chargeable with it, the liability attaches to the person who presents the receipt and demands the whiskey, and if he does not pay it, then the distiller may enforce his lien upon the whiskey, and in this way secure payment of the account. We think these statements were sufficiently explicit.

Another contention earnestly insisted upon is that these accounts are not property, and even if they are, they are not the subject of assessment because not enumerated in the list of assessable property set out in the statute. These two propositions will be considered together, and at the outset it may be admitted that if either of them is well taken, then the Commonwealth must fail in these proceedings. The Constitution, in section 172, provides that—

"All property not exempted from taxation by this Constitution shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

Section 4020 of the Kentucky Statutes reads in part—

"All real and personal estate within this State, and all personal estate of persons residing in this State, * * * shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

And in section 4022, it is declared that—

"For the purpose of taxation, real estate shall include all lands within this State and improvements thereon; and personal estate shall include every other species and character of property—that which is tangible as well as that which is intangible."

It is therefore plain that only "property" can be taxed, and equally clear that if these accounts are taxable it is because they are "personal property or personal estate." But, as we are not much concerned with the meaning of the words "personal property" or "personal estate," we will pass to a consideration of the meaning of the word "property," and what it includes, because if these accounts are property they are taxable. That the word "property" has a large meaning is recognized by all the textwriters and courts that have had occasion to consider its meaning. In Bouvier's Law Dictionary, under the title "property," it is said—

"The term 'property' embraces every species of valuable right and interest, including real and personal property, easements, franchises and hereditaments."

In Cyc. volume 32, page 648, in an article prepared by the Hon. Shackelford Miller, now one of the Judges of this Court, its definition supported by numerous authorities, is thus stated:—

"The term 'property' is a generic term of extensive application; and while strictly speaking, it means only the right which a person has in relation to some thing, or that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects, it is frequently used to denote the subject of the property or thing itself, which is owned or in relation to which the right of property exists. In the former sense it extends to every species of valuable right or interest, in either real or personal property, or in easements, franchises, and incorporeal hereditaments, and in the latter to everything which is the subject of ownership, or to which the right of property may legally attach, or in other words every class of acquisitions which a man can own or have an interest in. The term is therefore said to include everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal, choses in action as well as in possession, everything which has an exchangeable value, or which goes to make up one's wealth or estate."

In Trimble v. City of Mt. Sterling, 11 Ky. L. R., 727, this Court in applying to the words "personal property" in a revenue statute the meaning given to them in the Code, said—

"The words 'personal property' mean money, goods, chattels, things in action, and evidences of debt."

In the light of these authorities, and many others that might be cited to the same effect, we may confidently say that the word "property" as used in the revenue statute means everything of value that a person owns that is or may be the subject of sale or exchange or that when offered for sale will bring some price. And so, any existing, enforcible, collectible demand that one person has against another person or against property upon which it is a lien, and out of which it can be collected, is property. Thus defined we will now proceed to inquire whether

these accounts are property. It is said they are not, because they have no value, are not the subject of sale or exchange, or existing demands in the hands of the distiller. The argument is further made that they are not due by any person and when sought to be assessed had not matured, that the distiller had no enforcible or collectible claim against any person on account of them, that no person had entered into any contract, express or implied, with the distiller to pay them, nor was any person under any obligation to pay them—in short, that the relation of debtor and creditor did not exist. It is not necessary to constitute an existing demand, account or evidence of debt property that the holder or owner of it should have a right to enforce its collection from some particular or named person or that some named person should have assumed an obligation to pay a definite sum. Nor is the fact that the demand has not become due of controlling importance. The fundamental question to be ascertained in determining whether or not a demand or evidence of debt is property of value is,—has the owner of it the legal right to enforce its collection, and is it collectible. If the claim or demand is of value, and if the owner of it has the legal right to and can collect it, barring some unforeseen contingency that may occur, then it is not essential to its value or character as property that some particular or named person must have assumed a contract obligation to pay it. Suppose A. had a demand for $500.00, secured by a lien on a horse worth $1,000.00, arising under a contract by which it was agreed that the owner and holder of the demand must look alone to the horse for payment and not oblige any particular person to pay it. Would it be said that this evidence of debt was not property and had no taxable value, merely because no designated person had agreed to pay it, or because the horse might die before he could be sold in satisfaction of it, or, because his value might be reduced to $300.00 before the debt could be realized by his sale? We think not. Illustrations without number of this character might be mentioned to show that it is not indispensable to the existence of a valid subsisting collectible demand that some individual should have agreed to pay it, or that the holder and owner of it must certainly and without peradventure be able to collect or enforce its collection at a particular time. In respect to these storage accounts, it is certain that the distiller has in his custody

property worth many times over the amount of the account for storage against it. It is also certain that this property cannot be taken from him until the storage account is paid, except in the contingency that it might take the full value of the whiskey to pay the government tax. The lien to secure its payment, subject to the lien of the United States government for the tax due it, is superior to all other liens or claims upon the property, and sometime within eight years the storage account will be collectible. So that, the distiller has at each assessing period an existing demand, that is property of value, for the amount of the then earned and accrued storage on the whiskey in his possession, that, in the absence of some untoward contingency he can and will collect. It is true the whiskey might be lost in a fire, or a storm, or be reduced in quantity to such an extent that the distiller could not realize from its sale, the amount of his storage account. But this is no argument against the proposition that the storage claim should be treated as an existing evidence of debt and property of value before and until the contingency arises that may rob it of its value. Could it be said that the merchant who had an open account against a solvent customer should not be required to list it for assessment because the customer might become insolvent; or, insisted that a note secured by a lien upon personal property or a dwelling house worth many times more than its value should not be assessed merely because the house might be destroyed by fire or the property lost before the note becomes due?

Another reason urged why these accounts should not be assessed is that they are said to be contingent, indefinite and uncertain, because the holder of a warehouse receipt may ascertain that the whiskey is not worth as much as the charges against it, and for this or other cause might not present or demand the whiskey described in the receipt, or the loss of the whiskey in excess of the quantity that the distiller guaranteed each barrel would contain when demanded might be so great that it would cost the distiller more than the storage charges against the whiskey would amount to, to satisfy the conditions of the receipt, or the whiskey might, while in the bonded warehouse, be destroyed by fire or other cause, and in the happening of either of these events the distiller could not collect any storage. Of course it is within the bounds of possibility that any one of these contingen-

cies might arise, but the possibility that any of them will occur is so remote and uncertain as to make all of them negligible quantities in determining whether or not these accounts are property of value and subject to assessment and taxation.

It is further said that assuming that they are assessable they had no ascertainable market value at the assessing periods—hence it was not lawful to assess them. Section 172 of the Constitution, before quoted, provides that—

"All property   *   *   *   shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

By this constitutional standard the value of these storage accounts for assessment and taxation must be ascertained by the county court of the county in which the proceedings were instituted. The value at which they should be assessed we will not in this opinion undertake to determine—merely deciding that they are property of value and assessable, and that it was the duty of the distiller at each assessing period to assess for taxation all earned and subsisting storage accounts, without reference to when they may become due or collectible or when the whiskey upon which they are a lien was placed in the warehouse—in other words, the amount of past earned storage chargeable at each assessing period against the whiskey should be assessed.

But, it is said that the conclusion we have reached that these accounts are property, conflicts with the opinion of this Court in Commonwealth v. Kentucky Distilleries & Warehouse Company, 132 Ky., 521, where it was held that a trade-mark was not property. In so holding, the Court said:—

"But in the abstract, a trade-mark cannot be considered property. It cannot be disassociated from the business to which it belongs and in which it inheres.   *   *   * In its last analysis a trade-mark is a name or sign or symbol which indicates or certifies that a given article or commodity is in reality what it claims or purports to be. It has no intrinsic value whatever. It is merely a certificate of the truth. The property in which it inheres is just as valuable intrinsically without the trade-mark as with it. The property itself is valuable. It is the result of the labor or the ingenuity or the honesty of the owner or manufacturer. Take away the trade-mark, and the

property remains in every respect the same as it was before. The addition of the trade-mark simply tells the would-be purchaser that the goods are what he seeks. In many respects a trade-mark resembles, and perhaps is identical with, the good will of a business or establishment. The good will of a business is often worth money, but so far as we know, and believe, it has never been considered property for the purpose of taxation.''

That there is a marked distinction as to the nature and characteristic of a trade-mark as defined in the opinion, and storage accounts, is apparent. A storage account is a distinct species of property—being in itself a thing of value that may be the subject of sale or exchange.

The next inquiry is—under what item in the schedule of assessable property set out in the statute do storage accounts fall. In section 4058 of the Kentucky Statutes there is a descriptive schedule of the property that must be listed for assessment by taxpayers who own any of the property described in the schedule. In this schedule, seventy-two distinct items of property that are the subject of taxation are mentioned. Among the things so mentioned, are ''Amount of bonds and value thereof;'' ''Amount of notes secured by mortgage;'' ''Amount of other notes;'' ''Amount of accounts;'' ''Amount of cash on hand and on deposit;'' ''Amount of all other credits or money at interest''. It is the contention of the State that these storage accounts are embraced in the word ''Accounts,'' and should be assessed under this item. There is much force in the argument that storage accounts are ''accounts.'' They have many of the earmarks of an account, which may be defined to be an existing, enforcible collectible claim or demand not evidenced by a writing signed by the person to be charged and that arises out of or originates in a contract, express or implied. Generally speaking, and in its popular sense, an account is also a claim or demand due in behalf of a described or designated person against a described or designated person who may be required to pay it if responsible, or against whom a judgment may be had if insolvent. But we think that it is not indispensible to the existence of a taxable account that it should be owing by a particular person to a particular person, if in fact it is a sum of money arising out of a business transaction that a designated person has a legal right to collect and that is a claim against or lien upon property of value out

of which it can be collected. It is not so much the identity of the person owing the account that fixes its character as an account or that gives it value as an existing demand, as it is the fact that it is a subsisting collectible demand. Nor is the fact that the demand has not matured a controlling factor in determining its quality. An account, although not due or collectible at the assessing period may be the subject of assessment and taxation. The test to be applied in ascertaining whether it is assessable or not, is—has the demand at the assessing period an existing value to the owner of it. Let us now see what quality inherent in the ordinary definition of "Accounts" these storage accounts possessed at the time it was sought to tax them. They were existing demands that had a value to the owner and were a lien upon property of value amply sufficient to secure their payment, and in a few years at the furthest would become due and collectible. They arose out of a business transaction, and were for a fixed amount. So that really the only element wanting to bring them fully within the popular meaning of the word "account" is the fact that no particular person had contracted to pay them. But this link in the chain is not entirely missing. Each person who took the warehouse receipt did so with the condition attached that this storage must be paid before he could get the whiskey described in the receipt, and so each person holding the receipt impliedly agreed with the distiller that he would pay the storage or that the distiller could sell the whiskey in his custody and collect it. It might, therefore, be well said that the absence of a personal contract was compensated for by the conditions annexed to the receipt and which the holder had consented to by taking it. But, even if we should be mistaken in this view of the matter, we are satisfied that they are embraced by item seventy-three in the schedule. This item follows the specific enumeration of seventy-two articles of taxable property, and under the title "Miscellany" reads:

"Value of all other property not mentioned above."

This item was inserted to make more effective section 4050 of the Kentucky Statutes, providing that:

"Personal property of every kind shall be separately stated and valued in the appropriate column of the tax book herein provided, and if there be no appropriate

column, it shall be valued and stated in the column headed 'Miscellany.' ''

Therefore, as these storage accounts are property, they are certainly assessable under this item, that was intended to and does cover every species of property that the taxpayer owns that may not properly come within the meaning of any specific item in the schedule. This blanket item saves from exemption everything that is taxable. No species of property can escape its reach.

It is further insisted that these storage accounts are only income or rent derived from the use of the warehouse that the distiller is required by the government to erect for the purpose of storing the whiskey in and that can not be used for any other purpose; and that as he pays taxes on the warehouse to the State, he should not in addition to the payment of the tax on the warehouse be taxed on the income or rent derived from its use. In support of this proposition, we are furnished with an opinion by the Supreme Court of Illinois, in Sculley v. People, 104 Illinois, 349, holding that rent, accruing but not due, is not taxable in addition to the land. In that case the court said:

''In the valuation of the land itself for taxation, there would be included in it, as an element, the value of the use of the land. The rent is but a representative of the use of the land and taxing such rent against the owner of the land before it has accrued, and during the same time that the land is taxed, appears to be taxing a thing which was covered by the taxation of the land.  *  *  * Rent in arrears is a chose in action, and would be taxable as a credit, but rent to grow due is a part of the land, is an incident to it, and passes as such to a grantee by a grant of the land.''

But these accounts are not to be likened to accruing rent, which occupies a distinct and peculiar place in the law. The storage accounts that are assessable at the assessing period are accrued and not accruing accounts. The amount of the storage charged against each barrel on the date of each assessing period is fixed and determined by the contract set out in the warehouse receipt, and by the length of time the whiskey has been in storage. For example. if five barrels of whiskey are put in the warehouse on the first day of September. then on the first day of the following September the storage charge

against the whiskey would amount to $3.00. This amount would then be an existing charge against the whiskey already earned and accrued, and it is this earned and accrued charge that is the subject of assessment and not the storage that may be earned in the succeeding years. If an attempt were made to require the distiller to assess the storage that might accrue during the year succeeding the attempt to assess it, plainly it would be an effort to assess an accruing unearned account. We think it manifest that there is no similarity between rent accruing and accrued or earned storage accounts. On the other hand, the only difference between rent due and in arrears, and accrued storage accounts is that the collection of the rent might be enforced at any time, while the collection of the storage charge can not be enforced by a sale of the whiskey until it is taken out of the bonded warehouse. In both instances there is a collectible claim or demand, secured by a contract as well as statutory lien.

Another instance is that as the taxing authorities have never heretofore attempted to assess storage accounts, their failure so to do should be treated as a contemporaneous construction of the statute, that they were not assessable. We have held, as have other courts, that the contemporaneous construction given by a department of the government to an administrative law through a long series of years is entitled to great weight in determining the meaning of the law when it is sought to be applied to a state of facts similar to those it might have been applied to during the period the department failed to take any action. Louisville Tobacco Warehouse Co. v. Commonwealth., 106 Ky.. 165; Louisville Water Co. v. Louisville. 105 Ky., 754: Harrison v. Commonwealth, 83 Ky., 162; Barbour v. Louisville, 83 Ky., 102. But mere non-action upon the part of the officers of the State is not to be treated as contemporaneous construction. The rule of contemporaneous construction can only be invoked when it is made to appear that there has been in fact a construction given to a statute by public officials charged with its construction and execution and this construction has been acted upon for a series of years in administering the law so construed. As illustrative of this rule, we may quote from Harrison v. Commonwealth, 83 Ky., 162; where the court said:

"The executive branch of a government must neces-

sarily give a construction to the laws which it must execute; and if its construction has been followed for years and in view of, and without interference by, the law-making power, then such contemporaneous and long continued construction should not be departed from without the most cogent reasons. A long continued practice under a statute under such circumstances, ripens into an authoritative construction of it."

And from United States v. The Alabama Great Southern R. Co., 142 U. S., 615, 35 L. Ed., 1134, where the court said, speaking of a doubtful statute that had been affirmatively construed by the officials charged with its execution:

"We think the contemporaneous construction thus given by the executive department of the government, and continued for nine years through six different administrations of that department * * * should be considered as decisive in this suit. It is a settled doctrine of this court that, in case of ambiguity, the judicial department will lean in favor of a construction given to a statute by the department charged with the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change, whereby parties who have contracted with the government upon the faith of such construction may be prejudiced."

In our opinion there is no merit in the plea of contemporaneous construction.

The Kentucky Distilleries & Warehouse Company makes the following defenses not common to the other cases. First: That it did not own or operate any of the distilleries mentioned in the statement filed by the revenue agent, and, therefore, no storage was due to it, but, on the contrary, the storage, if any, was due to the several distilleries that issued the receipts. It appears that the Kentucky Distilleries & Warehouse Company operates some forty distilleries in this State, that if not owned, are certainly controlled, managed and operated by it. These several distilleries are conducted and operated under the names they respectively bore before coming under the control and management of the Kentucky Distilleries & Warehouse Company, and the warehouse receipts are issued in the name of the distillery at whose place the whiskey they represent is manufactured.

For business or other purposes, the Kentucky Distilleries & Warehouse Company operates and conducts these distilleries in the manner indicated, preserving in this way the separate identity of each; but, it is so plain from the evidence that the Kentucky Distilleries & Warehouse Company at the times the accounts sought to be assessed not only operated, conducted and controlled each of these separate distillery plants, but issued all the warehouse receipts issued on account of whiskey manufactured by them, that we do not think it necessary to recite the facts appearing in the record that make clear this conclusion. It is wholly immaterial in what name it operated these distilleries, or in what name it kept its books relating to the business of each of these plants. If, in fact, it operated and controlled them, was the owner of the whiskey manufactured at them, and the owner of the warehouse receipts issued for such whiskey, then the charges for storage were its property. Second: That the situs for taxation of these accounts, if they are taxable, is at the legal domicile of the Kentucky Distilleries & Warehouse Company in the State of New Jersey. The Kentucky Distilleries & Warehouse Company is a New Jersey corporation, and may be said to have a legal residence in that State. But all of its distilleries having whiskey in storage are located in this State and the principal business office of the Kentucky Distilleries & Warehouse Company is located in Louisville, Jefferson county, in this State. It is at this office that all the business relating to and concerning the distilleries operated by it is carried on, and there is kept all of the books, accounts and papers of the corporation that relate to the transaction of its business in this State. It may, therefore, be said that while the Kentucky Distilleries & Warehouse Company has a technical legal residence in the State of New Jersey, it has in this State a business residence at which all its business in this State is managed and carried on by resident agents and employes. It is here that the warehouse receipts are issued, and here that they are presented when the possession of the whiskey described in them is demanded, and here that the storage accounts are paid, although in the meantime and before they are actually transferred to the purchaser they may pass through an office of the company in New Jersey or New York. It is here that the whiskey is

located upon which these receipts are a lien, and to which the company looks for the payment of its storage fees. In short, aside from the fact that it has a mere technical legal residence in the State of New Jersey, all of its business is conducted and carried on in this State, and for every business purpose it is a Kentucky corporation. Under these facts we think it manifest that the accounts are assessable to it in this State at its established place of business in this State. The case of the Commonwealth v. Dun & Co., 126 Ky., 108, is directly in point upon this question. It is there said in effect that where a non-resident establishes a business in this State and manages it by resident agents, money in bank and debts due it accumulated from the business are taxable in this State. And in Commonwealth v. West India Oil Refinery Co,. 138 Ky., 828, the court said:

"The situs of intangible personal property for purposes of taxation depends altogether on legislative enactment or judicial construction. It does not always follow the beneficial owner; but may be taxed at the place where the person resides who has the control and management of the securities, who lends out the money, collects the interest, and exercises other acts of ownership and control over it, and where it may be said to be permanently located as much so as if the actual owner resided where it was. For many purposes the domicile of the owner is deemed the situs of his personal property, but this is only a fiction from motives of convenience, and is not of universal application, but yields to the actual situs of the property when justice requires that it should, and is not allowed to be a controlling feature in matters of taxation."

Wherefore, the judgment in each case is reversed, with directions to proceed in conformity with this opinion.