## Commonwealth, By, et al. v. J. M. Robinson, Norton & Company.

(Decided January 16, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Taxation—Assessment—Revenue Agents—Omitted Property.— Property that is omitted may be assessed. Proceedings to have assessed property that has been omitted from assessment may be instituted by revenue agents.

2. Same—Description of Property Sought to be Assessed.—When a revenue agent seeks to have assessed property that has been omitted from assessment, he must describe it so that it may be identified. A general statement that "accounts amounting to $1,200,000" have been omitted, is not sufficient. Each separate account must be identified by giving the name of the debtor and the amount he owes.

3. Same—Property Undervalued Cannot be Assessed by Revenue Agents.—It is only property that has been omitted from assessment that can be assessed by revenue agents. If property has been assessed, but at an undervaluation, it cannot be re-assessed or re-valued at the instance of a revenue agent.

4. Same—Power to Re-assess, and Increase or Diminish Values.— To the board of supervisors has been confided the exclusive authority to re-assess and re-value property returned for taxation by the assessor. If the taxpayer feels himself aggrieved because his property has been assessed too high, or the Commonwealth complains that is has been assessed too low, the remedy of both parties is by appeal to the board of supervisors from the assessment made by the assessor.

5. Same—Delegation of Exclusive Authority.—When the Legislature has selected any person or body of persons to perform certain designated duties in connection with the assessment of prop-

erty, the power thus conferred upon these persons or bodies cannot be exercised by any other person or body in the absence of legislative direction.

M. J. HOLT for appellant.

BODLEY & BASKIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this proceeding instituted by a revenue agent in the Jefferson County Court against the appellee company, the amended statement set out that the appellee company on September 1, 1909, had notes, and mortgages of the value of $31,000, which it listed for assessment at $3,100; that it had accounts of the value of $1,339,000, which it listed at $72,000; that it had in cash $62,000, which it listed at $10,000; that its stock of goods which was worth $819,000 was listed at $224,000, and it was charged that the property thus described was undervalued by the appellee for the purpose of escaping taxation. A motion to make the statement more specific was sustained as to all of the items except the one relating to the cash on hand, and the charge as to this item was controverted of record. An answer was also filed, pleading that all of the property sought to be assessed and each item thereof had been assessed for taxation as of September 1, 1909, at its real value, which corresponded with the amounts given in the statement filed of the value at which the property was assessed. When the motion to make more specific was sustained, the revenue agent declined to introduce any evidence, and the proceeding which had been appealed from the county court to the circuit court was dismissed in the circuit court.

Without relating further the proceedings in the lower court, it may be stated that there are two questions presented for our consideration on this appeal. First, taking for example the item of accounts that the statement charged was of the value of $1,339,000, and which had been listed at $72,000, was it proper for the lower court to require the revenue agent to specify the accounts claimed to be omitted from taxation and give the name of each debtor and the amount he owed? And second, when a taxpayer has listed any particular item of property for taxation, although he may have listed it at less than its assessable value, as for example if a stock of

goods worth $819,000 is listed at $224,000, can the revenue agent have the difference between the assessed and the actual or assessable value of the stock of goods assessed as omitted property? Both of these questions have been heretofore presented to this court, as we will hereafter point out, but in view of their importance we think it advisable to re-examine them and re-state our conclusion.

The Constitution of the State provides in section 172 that:

"All property, not exempted from taxation by this Constitution shall be assessed for taxation at its fair cash value estimated at the price it would bring at a fair voluntary sale."

The same provision is found in section 4020 of the Kentucky Statutes, in the chapter relating to Revenue and Taxation, in which chapter elaborate provision is made for the assessment of property. Section 4115 provides for the appointment of a board of supervisors in each county, and a like provision is found in the charter of many of the cities. The general powers and duties of the board of supervisors, as described in section 4120, of the Kentucky Statutes, are as follows:

"They shall make a careful examination of the assessor's books and each individual list thereof, and may increase or decrease any list; but the board shall not reduce or raise any assessment unless the evidence be clear and unmistakable that the valuation is not a fair cash value, and shall list all property omitted by the assessor which may be subject to taxation in the county, and shall correct any errors of the assessor; and in cases where the property has not been correctly valued, they shall fix the value thereof, and correct the assessor's books, so as to show the true value of the property, as herein provided; but should any property escape assessment by the assessors or supervisors, in whole or in part, it may be assessed as provided in section 3, article 15 (which is section 4241, of the Kentucky Statutes.)"

This section (4241) provides in part that:

"It shall be the duty of the sheriff or auditor's agent to cause to be listed for taxation all property omitted, or any portion of property omitted by the assessor, Board of Supervisors, Board of Valuation and Assessment or Railroad Commission, for any year or years. * * *"

Section 4260, in the article relating to Revenue

Agents, who are in some sections of the Kentucky Statutes called Auditor's Agents, provides that—

"It shall be the duty of the revenue agent, and the sheriff in each county shall have like power and authority as the revenue agent for said county, to cause to be listed for taxation all property omitted by the Assessor, Board of Supervisors, Board of Valuation and Assessment or Railroad Commission, for any year or years. The officer proposing to have the property assessed shall file in the clerk's office of the county in which the property may be liable to assessment, a statement containing a description and value of the property proposed to be assessed, * * * but no judgment by default or otherwise shall be rendered against such alleged owner unless the statement filed shall contain such a description of the property sought to be assessed as will enable the court to identify it. * * * "

Under these various statutes it is the duty of the assessor to assess all property subject to taxation "at its fair cash value estimated at the price it would bring at a fair voluntary sale," and it is the duty of the Board of Supervisors to examine carefully the returns made by the assessor and correct the assessments made by him by increasing or reducing them as in its judgment seems right and it has the further power to assess any property that has been omitted by the Assessor. In short, the Board of Supervisors is vested with all the authority necessary to secure a full and fair assessment of all the property within its jurisdiction. But, it came to the notice of the Legislature that much property in the State that was subject to taxation was not reported by the Assessors or discovered by the Board of Supervisors, and to secure an assessment of this omitted property the provisions relating to auditor's or revenue agents were enacted. These agents are merely gleaners of the field that has been gone over by the Assessors and Boards of Supervisors; and they are vested with authority, not to assess property that had been theretofore assessed by the Assessors or Boards of Supervisors, but to assess property that had been omitted to be assessed by the Assessors and Boards of Supervisors. The revenue agent was not intended to take the place of the Assessor or the Board of Supervisors. His office was created merely to supplement their work and to gather in the property they had omitted or that had escaped assessment by them. The act of 1906, which

is the present law upon the subject, defined and limited the power of the revenue agents, by requiring them to describe the property sought to be assessed in such manner as would "enable the court to identify it." The purpose and meaning of this act was fully and aptly stated in Commonwealth v. Glover, 132 Ky., 588. In that case the statement filed by the revenue agent set out that Glover owned old accounts worth $8,000, 200 shares of stock in ten railway companies, naming them, worth in the aggregate $16,000, 350 shares of stock in a number of other corporations, naming each of them, worth $25,000, and bonds of the value of $109,000 in a number of corporations, naming each of them. The question raised on the appeal was whether this statement was sufficiently specific. In considering this question, the court, after discussing the reason for the change in the law requiring the auditor's agents to state definitely the property sought to be assessed, said:

"Under the provisions of this act, two things must appear before the revenue agent can proceed with hope of success: First, that the taxpayer owns certain property, and, second, that he has failed to list it. Now, if the agent is not able to describe the property, his information in regard thereto must be very meager, and such information is in the language of the statute too meager to authorize even a default judgment. This statutory provision is not directory, as suggested by appellant, but it is mandatory, and was enacted to subserve a most useful purpose, and, while there is much reason in the argument of appellant that the 'statement' should not be required to be more explicit than the schedule which the taxpayer is required to make out for the Assessor, we are of opinion that this is a matter which properly addresses itself to the Legislative Department of government, and that neither revenue agents nor courts may properly concern themselves with either the wisdom or the policy of the statute. * * * We are at a loss to understand how the agent could charge that appellee was the owner of accounts of a stated value, and not be able to state from whom such accounts were due and owing, and the amount owing by each. The fact that he refused to so state was evidence that he could not do so, and was simply pursuing the 'dragnet' policy which the Legislature sought to condemn by the enactment of the very law under which appellant was proceeding. The same is true as to the items in the

'statement' of 'notes, secured and unsecured.' The items wherein it is sought to charge appellee with the ownership of stocks and bonds in foreign railroads and other corporations are very objectionable, and bear strong evidence that appellant was not proceeding in good faith along statutory lines, but was simply attempting to discover if appellee was, in fact, the owner of any of the many properties set out in these items in his 'statement.' It was the duty of the agent to set out in the 'statement' the number of shares which appellee owned in each of the corporations and the fair cash value of each. Any description short of this fails to comply with the requirements of the statute, and, as heretofore stated, this provision of the statute as to the description of the property and its fair cash value must be complied with before any judgment can be entered declaring the property subject to taxation.''

Adopting the principles announced in this opinion, which we approve as a fair interpretation of the statute, and applying them to the facts of the case before us, it is manifest that the statement filed by the revenue agent did not conform to the requirements of the statute. It is plain that the statement that the ''fair cash value of the accounts of said defendant company on September 1, 1909, for the year 1910, was $1,373,000, and that this amount was omitted from assessment, except as to $72,000'' is as general and as indefinite a statement as could well be made. It shows upon its face that the revenue agent did not know what accounts were omitted or their value, and that he was, as said in the Glover case, ''simply pursuing the 'dragnet' policy which the Legislature sought to condemn by the enactment of the very law under which he was proceeding.'' If statements like this should be treated as containing ''such a description of the property sought to be assessed as will enable the court to identify it,'' then the purpose of the Legislature in amending the law so as to better define the procedure would be entirely defeated, and revenue agents would be left at liberty to subject to trouble and expense every taxpayer in the State. No merchant or business man, or owner of property of any kind, however fair his assessment might be, would be safe from proceedings that might be instituted by them. For example, every merchant has accounts due him, and if the ''statement'' in this case was sufficient it would only be necessary for the revenue agent to file in the

county court an unverified statement saying that the merchant he had selected to proceed against had accounts to the amount of $10,000, or $100,000, or $500,000, that he had failed to list for taxation, although the revenue agent might not have any information at all as to the value of the accounts, due the merchant, and the same practice could be indulged in as to every other species of property. When it is sought to assess accounts, notes, bonds, stocks or any other like species of property, it is necessary that the statement should so describe each particular item sought to be assessed as will in the language of the statute "enable the court to identify it," or, in other words, to fix a value on it. If a merchant has one hundred accounts due him, in sums of from one hundred to one thousand dollars, some of these accounts might be worthless, others might be worth fifty cents on the dollar, and yet others might be worth their face value; and it was intended by the statute that the statement should state each particular account sought to be assessed giving the name of the person owing the account, and the amount thereof so that the court might be able under the evidence to put a value upon it. It is apparent that if the accounts were not thus described, the court could not with any degree of certainty or indeed at all determine what their value for assessment was. We therefore conclude that the lower court correctly required the revenue agent to make the statement more specific.

The second question—to briefly restate it—is, Can a revenue agent have property that has not been omitted from assessment but that has been undervalued, re-assessed? The argument of counsel for the revenue agent is that property that is undervalued is in fact omitted, or, in other words, has never been assessed, and therefore it is the right of the revenue agent to have it assessed as omitted property. It is said in effect that if A owns a horse worth a thousand dollars, and assesses him for two hundred dollars, that eight hundred dollars of his value is to be treated as omitted property subject to assessment by the revenue agent, or, if B owns a hundred-acre farm, the fair cash value of which is $100 an acre, or $10,000, and he assesses it at $50 an acre, or $5,000, that he has omitted $5,000 of assessable property that may be assessed by the revenue agent; or, if C owns 50 head of cattle worth $3,000, and he assesses them at $1,000, he has omitted from taxation property

of the value of $2,000, that may be reached by the revenue agent; or, if D., a merchant, owns a stock of goods worth $8,000, and he assesses it at $3,000, he has omitted from taxation property of the value of $5,000, that may be assessed at the instance of the revenue agent. Numerous examples like these might be given, but the ones mentioned are sufficient to illustrate the contention of counsel for the revenue agent. The powers and duties of revenue agents are defined and described by the statute, and to the statute alone we must look for guidance in ascertaining their powers. It is obvious that there is a wide difference between omitting property entirely for assessment, and assessing it at less than its assessable value. In the one instance it has not been assessed at all, and in the other it has been assessed. In the one instance it is property omitted from assessment, and in the other property not omitted but merely undervalued. That the revenue agent has authority to assess omitted property is not open to doubt. The statute expressly so provides. But, when it is attempted to extend his authority to the reassessment of property that has been assessed, we find no statute to support it. The schedule the taxpayer is required to sign and verify describes in great detail the items of property subject to assessment and taxation. It is the duty of the Assessor to inquire of the taxpayer concerning each item in the schedule and to require him to list for assessment, or to list for him at the value fixed by the statute, property owned by him and that is included in any of these items. When the assessment is thus made by the Assessor, no property that is assessed under any item can be considered as omitted, because in fact it has not been omitted, but has been listed for assessment. But if the taxpayer owns property embraced in any of the items in the schedule and fails to list such property, and it is not listed by the Assessor, or the Board of Supervisors, then it is omitted property, and it is only this class or species of property that the revenue agent can proceed to have assessed, as his powers are limited to the assessment of property that has been omitted. It is said, however, that Section 4241 of the Kentucky Statutes provides that it shall be the duty of the agent "to cause to be listed for taxation all property omitted or any portion of property omitted by the Assessor, Board of Supervisors, Board of Valuation and Assess-

ment or Railroad Commission,'' and that a fair construction of this language means that the revenue agent may assess property not only totally omitted, but partially omitted, or, in other words, undervalued. But the statute is not susceptible of this construction. The words "all property omitted" obviously apply to property of every kind and character that is omitted from assessment. It is a general phrase intended to cover every species and class of property. While the words "or any portion of property omitted" were merely intended to cover any particular property owned by the taxpayer that he omitted from assessment; as, for example, if the taxpayer assesses a portion of his property, such as land, and omits a portion of his property, such as notes or live stock, then he has not omitted to assess all of his property, but a portion of it, and that part that has been omitted may be assessed at the instance of the revenue agent. The words "property omitted" are found in Sections 4241 and 4260 of the Kentucky Statutes, the only two sections that relate to the powers and duties of revenue agents, thus making it clear that it was only intended that revenue agents should assess property omitted from assessment. The question we are considering, however, is neither a new nor an open one in this State. It was before the court in Commonwealth v. American Tobacco Company, 29 Ky. L. R., 745. In that case a revenue agent filed a statement, seeking to assess property that was not omitted, but that had been assessed, at an undervaluation, and we said:

"The county court and the Circuit Court both held that the property had been listed for taxation, that nothing had been omitted; and if an error had been made in valuing it, this error could not be corrected in a proceeding to list omitted property. It has often been held that the fact that the assessing officers assess property too low is no ground for relief in a proceeding such as this, as the court has no supervisory jurisdiction of assessments which have been examined and approved by the boards provided by law. It is only where the question is not one of valuation, but of omission to list at all that the court may take jurisdiction in a case like this."

In First National Bank v. Hopkinsville, 128 Ky., 383, the bank attempted in an action instituted in the court to obtain relief upon the ground that the assess-

ment of its property was too high, but we held that the court could not grant relief, saying:

"In order to hold that the appellant is entitled to recover, we would have to say that the assessment was too high. This we have no power to do after the assessing officers have passed upon the question and no complaint has been made to them within the time prescribed by law."

In short, the conclusion reached in both these cases was that as the law had provided a means by which errors in the assessment of property at too high or too low a value might be corrected, the right to seek relief was limited to the agencies established for that purpose, and the courts could not grant relief, as to do so would be to substitute the courts for the officers or tribunals created for the purpose of correcting errors in assessments. The tribunal created by our laws for the purpose of increasing the value of property that has been assessed at too low a rate, and diminishing the value of property that has been assessed at too high a rate, is the board of supervisors. If the taxpayer feels aggrieved because his property has been assessed too high by the assessor, he must appeal to the board of supervisors or be without remedy. On the other hand, if the Commonwealth or any taxing district complains that the property is assessed by the owner or assessor at too low a value its remedy is likewise by an appeal to the board of supervisors. This question was considered in Royer Wheel Company v. Taylor County, 104 Ky., 741. In that case the Wheel Company brought an action to have its tax list corrected, upon the ground that the valuation placed upon its property was excessive. In denying it relief, the court said:

"It had a right to a hearing before the board of supervisors, and if it felt itself aggrieved by the action of the board of supervisors, it could have appealed to the County Judge within ten days after the final adjournment of that board. This is the remedy provided by the statute."

To confer upon revenue agents authority to re-assess property would be to take from the board of supervisors the power confided to them by the Legislature and transfer it to revenue agents. The law making department has the widest latitude in selecting the agents to take charge of the assessment and taxation of property. And when the Legislature has selected any person or body

of persons to perform certain designated duties in connection with the assessment of property, the power thus conferred upon these persons or bodies can not be exercised by any other person or body in the absence of legislative direction. That the Legislature had the power to confer upon revenue agent the authority to have property re-valued or re-assessed is not open to doubt. The question is not what the Legislature could do, but what it did do. That it did not by any fair or reasonable construction intend to give revenue agents the authority to re-assess or re-value, is, we think, clear. If such had been the legislative purpose, the intention could have been expressed in a few simple words. If the statute conferring power upon these agents was open to two meanings or susceptible of two constructions, we would give to it that construction which would enable the assessing and taxing authorities to secure assessments and valuations in conformity to the constitutional requirement. But we have no right to add to or take from a plain and unambiguous statute words that would make a material and radical change in its meaning. The case of Wyerhauser v. State of Minnesota, 68 Minn., 353, 176 U. S., 550, 44 L. Ed., 586, relied on by counsel for appellant is not at all in conflict with the views we have expressed, but, on the contrary, is in harmony with our opinion. The Minnesota Statute construed and upheld in that case gave to the revenue agents express authority to re-value and re-assess property that was assessed at an undervaluation, and the Supreme Court said:

"It would be very strange if a State, against a gross under-valuation of property, could not in the exercise of its sovereignty give itself a remedy for the illegal deficiency; and this is the effect of the statute. It merely sets in motion new proceedings to collect the balance of the State's claim, and there is no constitutional objection in the way of doing this."

In the Mississippi case of Revenue Agent v. Clarke, 80 Miss., 134, also relied on by counsel for appellant, the court in a divided opinion ruled that a revenue agent under a statute quite similar to ours had authority to have property re-valued, but we do not concur in the reasoning by which a majority of the court reached the conclusion that a revenue agent could exercise powers delegated to another tribunal.

It results from the views expressed that the decision of the lower court was correct, and it is affirmed.