## Commonwealth v. Kentucky Heating Company

(Decided May 29, 1917.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

1. Taxation—Franchises—Omitted Property.—The franchise of a corporation includes all of its intangible property, and where the State Board of Valuation and Assessment has assessed the franchise of a domestic corporation no item of intangible property belonging to the corporation can be considered as omitted property for that year.

2. Taxation—Intangible Property—Assessment.—Revenue agents, being confined to omitted property, cannot proceed against a domestic corporation for the assessment of intangible property, if the franchise of the corporation has been assessed for that year by the State Board of Valuation and Assessment.

3.    Taxation—Error in Assessment of Franchise.—The fact that the State Board of Valuation and Assessment has erroneously assessed the franchise of a domestic corporation cannot affect the right of the county assessing officers to properly assess the corporation's tangible property.

A. SCOTT BULLITT and M. J. HOLT for appellant.

MATT O'DOHERTY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing in part and affirming in part.

On April 29, 1911, the Commonwealth, by one of its revenue agents, began this action in the Jefferson county court, seeking to assess, as omitted property, certain tangible and intangible personal property, alleged to have been owned and omitted from assessment by the Kentucky Heating Company, a Kentucky corporation, for the years 1906 to 1911, inclusive.

A demurrer was sustained to the statement filed, and the action was dismissed by a judgment of the county court, rendered December 17, 1912.

From this judgment an appeal was taken to the Jefferson circuit court on January 14, 1913, in which court the statement was amended and reformed into one statement of two paragraphs, the first paragraph relating to tangible property, and the second, to intangible property alleged to have been omitted from assessment by the defendant. The omitted tangible property was alleged to consist of the following items:

"Fuel, $5,000.00; coke and by-products, $5,000.00; materials and supplies to be used in connection with their lighting and heating plant, $48,000.00; engines and boilers, $45,000.00; machinery, $325,000.00; tools, $32,000.00; vehicles, $5,000.00; horses and mules, $5,000.00; harness, $1,000.00; office furniture and fixtures, $500.00; typewriters, adding machines and office machinery, $500.00; safes, $300.00; plant furniture and fixtures, not included in machinery, engines and boilers, $10,000.00; 17,000 meters, $185,000.00; 40 miles of pipe lines, $200,000.00."

The material allegations of the second paragraphs, which attempted to assess intangible property, are as follows:

"That on September 1, 1905; September 1, 1906; September 1, 1907; September 1, 1908; September 1, 1909, and September 1, 1910, the defendant, Kentucky Heating Company, was the owner and in possession of the following personal property located in Jefferson county,

Kentucky; having a taxable situs therein and of the fair cash value as stated, to-wit: cash on hand, $750.00; cash on deposit in bank, $43,000.00; accounts due from its customers for gas and by-products of its plant, $212,000.00; a chose in action against the Louisville Gas Company pending in the Hardin circuit court and at this time reduced to judgment $200,000.00; bonds in subsidiary companies, Kentucky Fuel Gas Company and Kalor Oil & Gas Company, $60,000.00. . . .. .

"That the said defendant company in reporting its property to the State Board of Valuation and Assessment for the assessment of its franchise tax neglected and refused to report the property above set forth belonging to it to the said board and said board having no knowledge of the ownership of said property or of said property or that the defendant owned it did not assess and consider said property in arriving at the value of the defendant's franchise for each of the years 1906, 1907, 1908, 1909, 1910 and 1911, and said property and all of same was wholly omitted from assessment for taxation and was not considered or valued or included in the assessment of defendant's franchise.

"Plaintiff states that had a full disclosure been made of the property of said defendant company that its franchise assessment on the assessing dates for said purposes, to-wit: on June 30, 1905; June 30, 1906; June 30, 1907; June 30, 1908; June 30, 1909, and June 30, 1910, were worth and of the value of $1,000,000.00 instead of $550,-000.00 for 1906, 1907 and 1908; $625,000.00 for 1909, and $700,000.00 for 1910 and 1911; the sum at which said franchise was assessed against the said defendant company.

"Plaintiff states that the said defendant company in giving in its property for a franchise valuation failed to give the correct value of its accounts, notes and other choses in action, failed to report certain other intangible property owned by it, including its cash in bank and cash in the hands of its agents and collectors. That the said defendant company failed to give in the true and correct mileage of its pipe lines in Jefferson county, Kentucky, and that there was at least 300 miles of said pipe lines not included in said report. That the said defendant company failed and neglected to give in the pipe lines owned and controlled by it which were nominally in the name of subsidiary companies which had ceased to exist or had a nominal existence and in which said defendant

company owned all of the stock and controlled the operations of said companies and said companies had in fact ceased to exist and that said pipe lines and franchises so nominally held in the names of said companies, but exercised, used, leased, owned or controlled by the said defendant company were not included with or listed by said company for assessment for taxation or reported to the said Board of Valuation and Assessment. That the fair cash value of the franchise of the said defendant company, taking into consideration the property omitted from assessment for taxation for said years was at least $100,000.00 in excess of the value placed thereon by the said Board of Valuation and Assessment and are known by the said defendant so to be, and that the said Board of Valuation and Assessment had no chance to pass upon the value of said property and the value of said pipe lines and franchise because said franchise and pipe lines were not disclosed in the reports made by the defendant company to the State Board of Valuation and Assessment and not considered by the said board in making the franchise assessment of the said defendant company."

Defendant filed motions to strike out and to make more definite and certain the allegations with reference to certain items in both paragraphs of the statement, and filed a demurrer to each paragraph, after which it filed an answer traversing the material allegations of the statements to which motions to strike had not been sustained.

The plaintiff then took the depositions of Mr. Donald McDonald, president of the defendant, and attempted to prove by him, that the company, upon the assessing dates for the several years involved, was the owner of certain personal property put in issue by the pleadings. These questions referred to both tangible and intangible property.

Upon advise of counsel, the witness declined to answer practically all material questions. Plaintiff then sought an order of court to require the witness to answer the questions, which was refused upon the ground that the record disclosed the fact that all of the property owned by the defendant, both tangible and intangible, had been assessed by the proper assessing officers, and that the proceeding was an effort to re-value assessed property, rather than an effort to assess property that had been omitted from assessment. Upon the same ground, the court, after submission, rendered a judgment dismissing the proceeding at plaintiff's costs.

The plaintiff, having saved exceptions to all adverse rulings, is prosecuting this appeal.

It is admitted that the defendant filed with the Auditor for each of the years involved, a statement required by law for use of the State Board of Valuation and Assessment in assessing its franchise, and that in each of said years its franchise was assessed by said board, and that the taxes upon those assessments have been paid by the defendant; but it is alleged in the reformed statement filed herein, that the defendant failed to answer, in its reports to the Auditor, or answered incorrectly, questions with reference to the items of property involved, and that, in consequence thereof, the State Board of Valuation and Assessment, in assessing the defendant's franchise for each of said years, did not know of, and did not consider, these several items in the assessments it made of defendant's franchise, and that these items are, therefore, omitted property.

Appellee insists that the value of its franchise includes all of its intangible property, and that after its franchise has been assessed by the proper authority, no item of intangible property is then omitted from assessment. Whether this is true or not is the first of two propositions presented by this appeal. The other proposition is, whether or not tangible personal property that was not assessed by the county assessing authorities can be thereafter assessed as omitted property, against a corporation whose franchise has been assessed by the State Board of Valuation and Assessment.

Before proceeding to a decision of these two questions, it will be necessary to state briefly several provisions of the law with reference to assessing the property of a domestic corporation, for such is the defendant.

Two methods, by separate taxing authorities, are provided for assessing the corporation's property. Its tangible property is assessed by the local assessor, whose action is subject to review and revision by the county board of supervisors. Neither the assessor nor the county board of supervisors has any authority to assess any of a corporation's intangible property. The State Board of Valuation and Assessment assesses the value of the corporation's franchise, and it has no power to assess any of the corporation's tangible property. These are the primary assessing authorities provided by our law.

In order to better insure the assessment of all property, revenue agents have been provided for, under sec-

tion 4260, Kentucky Statutes, whose duty it is, by proceedings such as this, to enforce the assessment of any property liable to assessment that may have been omitted by either of the primary assessing authorities; but the authority of these revenue agents is purely supplementary and strictly limited to property not assessed by the primary authorities, and they are without authority to take any action looking to a correction of the assessment of any property made by either regular county or state assessment officers. There is no conflict in authority. The primary assessing authorities have exclusive jurisdiction to assess all property, and the revenue agents have only secondary authority to assess what the primary authorities have not assessed, that is, omitted property. Coulter v. Louisville Bridge Co., 114 Ky. 42; Com. v. Cumberland T. & T. Co., 124 Ky. 535; Chicago, St. L. & N. O. Ry. Co. v. Com., 115 Ky. 278; Albion Co. v. City of Louisville, 117 Ky. 895; Com. v. American Tobacco Co., 29 Ky. Law Rep. 745; First National Bank v. Hopkinsville, 128 Ky. 383; Com. v. Glover, 132 Ky. 588; Com. v. Kentucky Dist. & W'house Co., 143 Ky. 314; Com. v. J. M. Robinson, Norton & Co., 146 Ky. 218.

It has been decided, over and over again, by this court, that the assessment of the "franchise" includes all property of the corporation, except tangible property assessed or liable to assessment. Henderson Bridge Co. v. Com., 99 Ky. 623; Com. v. Cumberland T. & T. Co., *supra*.

It is very clear from the foregoing authorities, that, if the property sought to be assessed herein was assessed by the primary assessing authorities, this action cannot be maintained, and that the judgment should be affirmed. But it is contended, that, because the defendant, in its reports to the Auditor, did not answer some of the questions at all and denied ownership of any quantity of some items of property about which it was required to give information, such items must be presumed to have been excluded by the State Board of Valuation and Assessment in assessing the franchise, and that when the revenue agent, in this proceeding, had proven that the corporation did own items of intangible property not disclosed by it in its report to the Auditor, the burden was then upon the corporation to show that the assessment of the franchise included these omitted items. But we are unable to consent to the application of this rule here because, as we have seen, the franchise assessment does

include all of the corporation's intangible property. This being true, it inevitably follows that, in assessing the franchise, the state has assessed all intangible property; none of it is omitted. There is no law for assessing a corporation's intangible property, except by assessing its franchise, which is to be done primarily by the State Board of Valuation and Assessment, and upon its failure so to do, then, and then only, by the revenue agents.

This does not mean, and it does not follow, that because the state may not, through its revenue agents, revise and correct an erroneous or fraudulent franchise assessment made by the State Board of Valuation and Assessment, no remedy exists. It is simply decided here, that this proceeding, by a revenue agent, is not a proper method under the law for relief from erroneous assessments resulting from fraud or mistake. Neither is the question involved here of what shall be the consequences to the corporation and its officers, in a proper proceeding, for any fraud or criminal act they may have perpetrated in making false statements in the reports to the Auditor which are considered by the State Board of Valuation and Assessment in fixing the value of the franchise for assessment.

This court has recognized in numerous cases, the right of the property owner, in a proper proceeding, to correct an erroneous assessment resulting from either fraud or mistake on the part of the board; and the state ought to have, and undoubtedly has, the same right to correct an erroneous assessment resulting from fraud or mistake upon the part of the taxpayer, but the fact such a right has never been exercised or pointed out, so far as any reported case discloses, does not authorize permission to so do in such a proceeding as this, since the statute defining the powers of revenue agents clearly forbids it. Section 4260 of the statutes provides that *omitted* property brought to light by revenue agents shall be *assessed* by the courts and certified to the proper authorities for the collection of taxes thereon; their action in assessing omitted property is final, and there is no authority whatever in that or any other section for a reconsideration of any such assessment, by any other assessing authority.

Of course the legislature could have authorized an action by the revenue agent as relator on behalf of the state to sue within the five year, or any other, limitation period for the purpose of reviewing an incorrect assess-

ment resulting from fraud or mistake, but this it did not do under section 4260, the only statute authorizing the revenue agent to sue, and he, therefore, has no such authority. Not having been clothed with authority to act as relator for the state to open up an assessment incorrectly made by the proper authorities, the case of Commonwealth v. Helm, 163 Ky. 69, is manifestly not in point.

Confusion will be avoided if we keep in mind that the only "item" or unit of property assessable by the state board is the "franchise" of a corporation, while the "items" or unit of intangible property assessable by the local assessor are "accounts," "stocks" etc., of an individual. When either authority assesses an item or unit of property it is authorized to assess, the revenue agent can neither assess that item nor have corrected such assessment even if erroneous. If the assessor assesses "stocks," but not "accounts," owned by an individual his "accounts" are omitted, but if the state board assesses a corporation's "franchise" it has assessed all of its "stocks" and "accounts," because franchise includes both stocks and accounts. In other words, no "item" assessable against a corporation that the state board can assess has been omitted.

The action of the Board of Valuation and Assessment in assessing the franchise excludes the right of revenue agents to assess it, or any of its parts, and the board's action when it has assessed the franchise is final except for fraud or mistake upon the part of either the state's agents or the property owner; and for fraud or mistake the revision permissible is by direct attack to set it aside; it cannot be ignored by either the state or the property owner, or reviewed and corrected in an entirely independent and collateral proceeding such as this. That this is an effort, in so far as it attempts to assess intangible property, to revise and correct the valuation of the defendant's franchise, as fixed by the State Board of Valuation and Assessment, is entirely clear from the allegations we have copied above from the second paragraph of the plaintiff's statement. Even if it is true that the board did not consider these items of intangible property, as alleged, it results only that the board did not correctly assess the "franchise," the only thing it could assess, if it proceeded under one of several methods of valuation open to it, and, as a "franchise" is an entity, as the term is used for assessment purposes, made up of the many items of a corporation's intangible property,

just as are the terms "accounts," used to designate the individual's items of intangible property, etc., when the franchise is assessed the assessment must necessarily cover all of its constituent elements. We are unable to see how it can be said, when the "franchise" of a corporation has been assessed as a whole, that any of its parts have been omitted, if when some "accounts" of an individual have been assessed, no accounts can be said to have been omitted. In both instances frauds are possible and frequent, but neither can be investigated or corrected by revenue agents under their limited statutory powers. Nor is the *opportunity* for profit to a corporation from fraudulent reports to the Auditor of the value of its "franchise" any greater or any different than the opportunity of the individual to profit by fraud in listing his "accounts" or "stock," etc., with the assessor, unless it be that deception of the corporation may involve larger values than that of the individual. Both the report of the corporation and that of the individual are but evidence to be considered by the proper assessing authority in an effort to correctly value property, and the values so fixed are alike open to attack only in a direct proceeding, but closed to investigation in a collateral attack.

Not only does the statute authorizing the assessment by the revenue agents specifically confine such assessment to omitted property, but such limitation is in accord with all recognized rules of procedure. A collateral attack is never permitted upon a judicial or quasi-judicial finding, even for fraud or mistake. This proceeding is nothing more or less than a collateral attack upon the action of the State Board of Valuation and Assessment in fixing the value of the defendant's franchise, for that is all it could assess, and hence all it could omit from assessment.

In Chicago, St. L. & N. O. Ry. Co. v. Com., *supra*, this court said:

"The action of the board was conclusive, and, after the expiration of the time for hearing complaints for reduction, was binding alike upon the state and the railway companies."

The following is taken from Albion Co. v. City of Louisville, *supra*:

"The statute confides these questions of value to the board of equalization, and the court has no power (at the instance of the property owner) to review its conclusions

in that respect unless the board has proceeded corruptly and fraudulently. . . ."

In Henderson Bridge Company v. Com., *supra,* we find:

"It should be further said that the findings of this board of valuation and assessment partake of a judicial nature."

That the findings of this board do partake of a judicial nature, if not conclusively established by these authorities, is fully demonstrated by section 4079 of the Kentucky Statutes, authorizing its action, which provides that, in addition to the information furnished by the reports corporations are required to make, the board may consider other evidence, and may excuse a corporation from answering such questions as it may see fit. The board is not confined, in valuing the franchises of domestic corporations, to any particular method, except that the franchise is the value of all property less tangible property; and the information furnished by answers to all of the questions in the report the corporation is required to make furnishes information necessarily permitting the valuation upon one of several independent and different bases, viz: the earning capacity of the corporation, the market value of the capital stock, and by adding up the value of items of property, and possibly other methods. It cannot be doubted that the board, under this statute, has ample power to compel a corporation to supply any omission in the report it has filed, as well as to excuse it from answering certain questions, and has full discretion in considering both the evidence heard and the method to be adopted in fixing the value of the franchise, and when, in the exercise of this discretion, it has assessed the franchise, that assessment is final, except in a direct proceeding for fraud or mistake, whether by the state or property owner. Defendant's franchise was assessed for each of the years involved here, and the intangible property now attempted to be assessed is unquestionably a part of the franchise. Whether or not these particular items of intangible property were considered by the board in assessing the franchise does not alter the fact that the franchise was assessed, but can prove only, if anything, that it was incorrectly assessed.

We are unable to see any difference in principle between the question involved here and that before the court in Com. v. J. M. Robinson, Norton & Co., *supra,* wherein it was attempted, by a revenue agent, to assess,

as omitted property, certain accounts and other personal property, the true value of the accounts alleged to be $1,339,000.00, but listed only at $720,000.00, and the court held, that, having assessed "accounts," an investigation was not authorized, to ascertain whether or not all of the accounts owned were included in the assessment; that all of the items of property that could be classified as accounts must be considered to have been assessed, and none of the accounts owned by the party could be said to be omitted property. This can mean only that when one classification of property has been assessed, however erroneously done, that class of property is foreclosed to investigation by a revenue agent, in such a proceeding as this. There was cited in that opinion, as illustrative of the fact that the assessment of the whole included all of its parts, among other cases, the case of First National Bank v. Hopkinsville, *supra,* in which an attempt was made in a collateral proceeding to review the action of a proper taxing board in the assessment of a franchise, upon the ground that the taxing board had erroneously failed to exclude from the assessment exempted government bonds, but this was refused by the court, upon the ground that it was an effort to correct the assessment of a *franchise* upon the ground that it was too high, and that the assessment having been made by the proper officers and approved by the board provided by law, and no complaint having been made within the time prescribed by law, their action was conclusive upon the parties. It would be hard to understand how, under similar circumstances, the state could be allowed to correct the assessment of a franchise upon the ground that it was too low because of the failure of the board to consider certain constituent parts thereof, if the property owner may not have the valuation lowered when certain property has erroneously been included in the franchise valuation.

Our attention has been called to the case of Commonwealth v. Louisville Gas Co., 135 Ky. 324, as authority for this proceeding, but in that case the court *decided* that no property was omitted because the report of that corporation disclosed its earnings from all of its property just as the report of this corporation exhibited its earnings from all of its property, so that the *judgment* in that case sustains rather than opposes our conclusion. It is true that it was *said* in that opinion that an omission to report by an individual all of a class of his property such as notes, and the failure of a corporation to report

all items of its intangible property constituting its franchise, would warrant an assessment by a revenue agent as omitted property, the unreported parts of such properties, but that question was not up in that case as the court found there was no omitted property involved, and when that question was presented for decision in the case of Commonwealth v. J. M. Robinson, Norton & Co., *supra,* this court, ignoring the *dictum* in the Louisville Gas Co. case, held that when a part of a class or unit of intangible property had been assessed against an individual that class was closed to a revenue agent's investigation. The same reasoning affects similarly a corporation's intangible property assessable under the classification franchise. If the dictum in the Louisville Gas Co. case was not to be accepted in the Robinson, Norton Co. case, it ought not to be regarded as authority in this.

The case of Commonwealth v. Adams Express Co. is not authority here, for in that case the franchise had not been assessed but was omitted, and therefore assessable by the revenue agent, and under such circumstances the duty devolved, of course, upon the corporation in that action to furnish the same information to the court that it ought to have furnished the State Board of Valuation and Assessment.

Convinced that this proceeding was an effort upon the part of the revenue agent, in so far as intangible property was concerned, to review the assessment made by the Board of Valuation and Assessment of defendant's franchise, it follows that the lower court correctly dismissed so much of the petition.

2. In assessing a domestic corporation's franchise, the State Board of Valuation and Assessment is required to find the value of all of the company's property, of every kind, and from the amount so found to deduct the value of its tangible property, assessed or liable to assessment. The lower court was of the opinion that, since the state board had valued the franchise by deducting from the amount of all the corporation's property the amount of its tangible property, if tangible property had been omitted from assessment, that fact was immaterial, because the omission had resulted in an assessment of the franchise, to the extent of the omitted tangible property, higher than its real value, and that the state, having collected taxes upon this excess in the valuation of the franchise, was not hurt by the omission to assess the tangible property, since, if as-

sessed, it would reduce, in exactly the same amount, the value of the franchise. In this we think the court was clearly in error. In the first place, it is shown by the company's reports and the findings of the State Board of Valuation and Assessment, that the company reported the value of its tangible property for the year 1910 at $600,000.00; that the board fixed the value of all of its property for that year at $1,300,000.00, and assessed its franchise at $700,000.00, which is the difference between the value of all of the property, as found by the board, and the value of its tangible property, as fixed by the company's report to the Auditor; yet we find, from a copy of the assessment in the evidence, that for that year the company, in fact, was assessed with no tangible property whatever. In other words, the company got credit on the valuation of its franchise, for $600,000.00 worth of tangible property liable to assessment, but was actually assessed with no such property. It is, therefore, apparent that, if the company reported correctly to the State Board of Valuation and Assessment its tangible property, it omitted from assessment a large quantity of such property. In the other years involved, the company did assess some tangible property, although in a much less amount than it had reported its value to the State Board of Valuation and Assessment; but this discrepancy in amounts does not prove that any of such property was omitted; however, for each of these years it is alleged that certain specified items of tangible property were omitted, and proof of the truth of this allegation, as to some of these items, at least, is furnished by the assessments for such years, because no such items were listed.

Moreover, if the state cannot, in this kind of a proceeding, correct an erroneous assessment of the franchise, for the same reasons defendant cannot take advantage of another error in the same assessment, to defeat the right of the state, through its revenue agent, to assess any tangible property which was, in fact, omitted from assessment. Besides, the State Board of Valuation and Assessment had no right or authority to assess any tangible property. It could only assess the franchise, and the fact that it had erroneously assessed the franchise by including in its value tangible property, gave to the company only a right to correct that assessment, in a proper proceeding, and did not excuse it from assessing, with the proper authorities, its tangible property, and

offers no defense against a proper assessment of the tangible property. To the extent the opinion in Com. v. Southern Pacific Co., 150 Ky. 109, is in conflict herewith it is overruled. Whatever items of tangible property it failed to assess with the proper authorities, the revenue agent, in this proceeding, had a right to have assessed, regardless of any error in the franchise assessment, and under sub-section 8 of section 606 of the Civil Code, had a right to examine, as upon cross-examination, the company's president, to prove the ownership of any such property and its omission from assessment.

The lower court, therefore, erred in refusing to require Mr. McDonald to answer the questions in reference to the company's tangible property, upon such items as had not been assessed by the proper taxing authorities.

Nor will the company be permitted to hide behind its small assessment of unclassified property. Items that were not specifically assessed will be presumed to have been omitted, but from such omitted items as may be uncovered the company may have deducted, as a credit, the amount it assessed as unclassified property.

We feel that we should say, before closing this opinion, that no property owner should, or will, be permitted to profit by his own fraud, practiced in the assessment of his property, whenever, in a proper action, the state, by its proper officers, discloses an error resulting from such fraud; but to obtain this much desired end, the state, like any other litigant, must employ seasonably the proper procedure. It cannot permit an erroneous assessment to become final by inaction, and then, in a collateral proceeding, disturb the final action of regularly constituted authorities. If fraud was practiced by the defendant in procuring its franchise assessment for the years involved, as alleged, the state had ample opportunity to have these assessments corrected before they became final, and that it did not do so affords no reason now for having reviewed, through its revenue agents, who are limited to assessing omitted property, the findings of the State Board of Valuation and Assessment, upon a question delegated by law to its discretion.

For the reasons indicated, the judgment is reversed, and the cause remanded for further proceedings consistent herewith.

The whole court sitting.

Judge Carroll dissents.

DISSENTING OPINION BY JUDGE CARROLL.

The opinion of the court holds (1) that intangible property, such as cash, bonds, and stocks, which a corporation omits to list in its report, cannot be assessed as omitted property by the state at the suit of a revenue agent; and (2) that such omission should be treated merely as an under-valuation of its intangible property by the corporation, and hence the omitted property cannot be assessed by the state at the suit of a revenue agent.

I do not agree to either of these propositions, and as the questions involved are of public interest, I think it proper to state the reasons for my dissent. The amount in controversy in this case is not of much moment, but as the principles announced in the opinion are applicable to great numbers of corporations, big and little, some of them being required to make reports involving items of property the value of which runs up into millions of dollars, it will at once be seen that the questions at issue, are of far-reaching importance in the fiscal affairs of the state, and should on account of their importance be correctly determined. This should be so to the end that corporations disposed to avoid taxation by making false and fraudulent reports will understand that these methods will not accomplish the purpose intended, and in order that the fiscal officers of the state may know what remedy is available when cases of this kind arise.

For the purpose of arriving at the value of the intangible property of corporations subject to what is commonly but incorrectly called a franchise tax, they are required to submit to the Board of Valuation and Assessment verified reports stating in detail the value of various items of personal property concerning which it is necessary the board should have correct information if it is to fix a fair and just valuation on this intangible property. When items of property are omitted by the corporation, it is plain that the board cannot on the report assess all of the intangible property at its fair cash value, and as a necessary result the corporation will escape taxation on the items of property it has omitted from the report if the board acts on the report alone and there can be no reassessment. This was the reason why certain items were omitted from the report submitted to the board in this case, and, encouraged by this opinion so to do, this will be the reason why items of property will be omitted from reports in the future that are made by other corporations.

It is perfectly plain that every corporation knows the character of property it owns and the reasonable value thereof, if it has a value, or, at any rate, knows whether or not it owns the character of property specified in the report, and equally plain that when a corporation omits from its report valuable items of property, the only purpose of the omission is to escape taxation on this class of property. For example, if a corporation owns bonds or stock in other corporations worth say a million dollars, and it reports that it owns no bonds or stock, the Board of Valuation and Assessment, acting on the report alone, cannot consider this item of property in assessing the value of its intangible property, and to this extent the assessment of this class of property may be one million dollars less than it should be. It is very true that the Board of Valuation and Assessment may adopt two or three different methods of arriving at the value of this property, but whichever method is adopted it is necessary to a correct assessment that the corporation should make full and truthful answers in its report to the questions propounded by the board.

It is said, however, that the board is not confined to the report, but may, independent of it, and on other information, ascertain the character of the property owned by the corporation and the value of it, although it may be omitted in the report. It is true the board is not limited in making the assessment to the information contained in the report, but may seek and get other information, and if it appeared that the board did this and actually considered the omitted property in fixing the value of the intangible property, the omission contained in the report would not affect the result. But the board has a right to presume that these verified reports are correct and to act on them, and I may with propriety add that such is the practice of the board.

Nor need there be any apprehension that if property omitted from the report should be afterwards assessed in the county court at the instance of a revenue agent, it might subject the corporation to double taxation, because the assessment in the county court, as I will later show, must be submitted to and acted on by the board before any tax can be levied on account of it. All that the revenue agent can do is to bring to the attention of the board by the judgment of the county court the value of the omitttd property, and whether the board makes an assessment on this omitted property so brought to its

attention by the revenue agent is a matter for the board to determine. If the board has outside of the report obtained correct information as to the value of these omitted items of property and considered them in making its original assessment, of course the board could not and would not make another assessment on account of them. But, as I have stated, the fair presumption is that the board acted on the report, as it had a right to do, without seeking outside information, and so when it is attempted to assess property of a corporation omitted from its report, the burden should be on the corporation not only in the county court, but thereafter before the board, to show that notwithstanding the omission in the report, the board did not act altogether on the report, but received independent of it information of the omitted property and considered its value in making the original assessment.

In other words, the burden is on the Commonwealth in the suit of the revenue agent to show that there was omitted from the report made by the corporation property that should have been reported, and the nature and value of such property, and when it does this, the burden is on the corporation to show that notwithstanding the omission the board in making its original assessment considered and estimated the value of the omitted property on information gathered from sources outside of the report. Hillman Land & Iron Co. v. Com., 148 Ky. 331; Kentucky Heating Company v. City of Louisville, 174 Ky. 142.

Another ground strongly relied on in the opinion is that the omission of items in the report should be treated merely as an under-valuation of its property by the corporation and consequently the rule adopted in Commonwealth v. J. M. Robinson, Norton & Co., 146 Ky. 218, should be applied. In that case it was held that only items of property that were wholly omitted from an individual assessment list could be assessed by revenue agents, and that items of property that had been assessed but on an under-valuation could not be assessed at the instance of a revenue agent; and it is said in the opinion in this case that as all the property owned and reported by the corporation was considered by the board in putting a value on its intangible property, its omission of one or more items of property merely resulted in an under-valuation of its assessable property. In other words, that the omission of some items of property is not to be treated as an omission in the sense that it becomes omitted

property, but merely as an under-valuation of its property. But, plainly, this argument is not sound, because in the first place a total omission to list an item of property cannot under any reasonable view be treated as an under-valuation of this item. There can be no under-valuation where there is a total omission. An under-valuation can only exist when the item of property has been reported but at a value less than its real value. If it has not been reported at all, it is an omission, and the same rule should be applied to corporations as is applied to individuals. If the individual assesses all his property, but at an under-valuation, the revenue agent cannot have it assessed, but if he fails to assess some class of property, this class becomes omitted property and the revenue agent may have it assessed. And to say that a corporation may omit from its report the most valuable items of property it owns, leaving a few insignificant ones to be considered by the board, and thereby escape taxation on these omitted items on the theory that it was only an under-valuation, is utterly untenable. I concede that if a corporation in its report to the board under-values items of its property, the revenue agent cannot have these under-valued items assessed as omitted property, but when it omits them entirely, it is perfectly clear to my mind that these items may be reassessed or rather once assessed.

It is of course true that when the board comes to fix the value of the intangible property of a corporation subject to what is commonly called a franchise tax, all the items of property mentioned in the report are considered, and it is equally true that if the corporation omits some items of property, there would be an under-valuation of the total of its intangible property, but this under-valuation would necessarily be the result of the omission to list certain species of property. When some items are omitted, the mere fact that the total amount will be an under-valuation does not answer the argument that the omitted items should be treated as omitted property. If an individual omits an item of his property, it lessens the value of his total assessment, and if a corporation omits an item of its property, it lessens the value of its total assessment, and yet we are told that although the omitted item in the assessment list of the individual can be assessed in the suit of a revenue agent, the omitted item in the assessment list of a corporation cannot be so assessed because it amounts to an under-valuation and not an omission. The necessary result of this conclusion

is to discriminate against the individual in favor of the corporation and to let the corporation but not the individual escape taxation on omitted property.

The next question is, how can the value of these omitted items be retroactively assessed after an assessment has once been made by the Board of Valuation and Assessment  In the opinion it is said the state has a remedy in a case like this, and that the remedy is a direct suit to surcharge the original assessment made by the Board of Valuation and Assessment, but that this cannot be done at the suit of a revenue agent in the manner provided in section 4260 of the Kentucky Statutes.  This is an important question and I think it can be demonstrated that the statement in the opinion that the original assessment of the board cannot be opened up in the suit of a revenue agent under section 4260 of the Kentucky Statutes for the purpose of correcting fraud practiced by the corporation in failing to list items of its property, is unsound in principle and wholly unsupported by authority.

I readily concede that the general rule, in the absence of a statute controlling the subject, is that judgments or final findings of assessing boards cannot be attacked or opened up in a collateral proceeding.  But I am very sure that this rule has no application whatever to the matter in hand, because the practice in this class of cases is controlled entirely by the statutes.  It is not subject to or controlled by the general principles of law which provide that judgments can be vacated or opened up only in a direct proceeding.  When the statutes point out a remedy, that remedy must be followed.  It excludes all other remedies.  And the statutes provide in section 4260 that ''It shall be the duty of the revenue agent . . . . to cause to be listed for taxation all property omitted by the  .  :  .  Board of Valuation and Assessment  . . . for any year or years.''  This statute, which was intended to and does furnish an ample remedy for the correction of any mistake made or any fraud practiced by a corporation in the omission of its property, was also intended to and does furnish the only means by which omitted property can be assessed.  Thus it was said in Com. v. Helm, 163 Ky. 69:

''But every suit and every proceeding instituted in the name of the Commonwealth and for its benefit must of necessity be brought on the relation of some person authorized to act for the Commonwealth.  There is no doubt that, where the Commonwealth is the injured party,

it has the right to sue for redress, but yet it cannot sue unless through the instrumentality of an agent or person designated by statute or empowered by recognized principles of law to act for it. McAlister v. Com., 6 Bush 581; Com. v. McGovern, 116 Ky. 212; Respass v. Com., 131 Ky. 807; People v. City of St. Louis, 5 Gilman (Ill.) 351, 48 Am. Dec. 339. So that when a suit to assess omitted property or to collect omitted taxes is brought in the name of the Commonwealth, as it must be, it can be brought only on the relation of some person authorized to use its name for the purpose of maintaining the suit. In short, there must be a relator. Com. v. Columbia Trust Co., 162 Ky. 825.

"It is also, we think, apparent that if the Commonwealth indicate who must be the relator in proceedings like this, only the person designated by the Commonwealth to act as relator may do so. In other words, if the Commonwealth, through its legislative department, declares that certain classes of suits or proceedings shall be prosecuted by designated persons or officers, the class of suits thus described, although brought in the name of the Commonwealth and for its benefit, must be brought on the relation of the persons or officer invested with this authority. . . .

"This brings us directly to consider whether the Commonwealth has by statute directed in whose name as relator this class of suits may be brought. If it has, they must be brought in the manner prescribed and by the person designated, and, if they are not brought in the manner prescribed and by the person designated, the defendant has the same privilege as any other defendant would have in other cases to question the right of the Commonwealth to maintain the suit.

"The act of 1912, now sections 4258 and 4260 of the Kentucky Statutes, and which was in effect when these proceedings were had, provides for the assessment of omitted property by revenue agents and sheriffs. It specifically points out the powers and duties of these officers as collectors of omitted taxes, and has vested in them the exclusive authority to institute and prosecute such proceedings as may be necessary to assess omitted property and enforce the collection of omitted taxes. This being the state of the law, we think that all suits brought in the name of the Commonwealth for this purpose must be brought on the relation of a sheriff or revenue agent,

and that no other officer or person is authorized to either institute or prosecute such proceedings."

It is also worthy of notice that although this court has written a great number of opinions deciding cases in which suits were brought by revenue agents for the purpose of assessing property alleged to have been omitted by corporations in their reports to the Boards of Valuation and Assessment, in no one of these cases was it held that such a suit could not be maintained, although in many of them the suits were dismissed because there had been no omission. Chicago, St. L. & N. O. Ry. Co. v. Com., 115 Ky. 278; Com. v. C. & O. Ry. Co., 131 Ky. 661; Com. v. Southern Pacific Co., 134 Ky. 421; Com. v. L. & N. R. R. Co., 142 Ky. 663; Com. v. Southern Pacific Co., 144 Ky. 803; Com. v. Southern Pacific Co., 150 Ky. 97. In all these cases and many others it was recognized that omitted property of this kind could be assessed at the suit of a revenue agent, and I cannot understand how this proposition can be successfully disputed in view of the statute expressly providing that "It shall be the duty of the revenue agent . . . . to cause to be listed for taxation all property omitted by the . . . . Board of Valuation and Assessment . . . . for any year or years."

This statute specifically points out how omitted property may be assessed. It furnishes ample means and the only means for its assessment, and it should be followed.

I do not, of course, contend that the county court, when it comes to assess at the suit of a revenue agent omitted items of property, may review the action of the board or re-assess property reported to the board by the corporation. All that the revenue agent can do is to have this omitted property assessed in the county court, and when it has been so assessed, the clerk of the court that fixed the value must certify the assessment of the property and its value, as provided in section 4260 of the Kentucky Statutes, to the Auditor of Public Accounts, who is chairman of the Board of Valuation and Assessment. The board can then investigate the matter, and if it appears that the omitted items called to its attention were omitted by it in making the original assessment, it may, upon a consideration of the value of these omitted items, increase the assessment as originally made and certify the increased assessment to the proper officers for the collection of taxes thereon. If, on the other hand, it determines that the items of property omitted from the re-

port were considered by it in making its original assessment, or if it determines on a consideration of the whole matter that the original assessment should not be increased on account of the omitted items, then it should not make any increase in the original assessment. Under this plan the corporation will not be harassed by various suits or subjected to a double tax, nor will it be required to pay more than it should have paid in the first instance if it had made a correct report.

In Com. v. Adams Express Co., 118 Ky. 312, a revenue agent sought to have assessed as omitted property the intangible property of the Adams Express Co. for certain years in which it had failed to make any report of its property to the Board of Valuation and Assessment. In holding that the intangible property of the company could be assessed at the suit of a revenue agent, and in answer to the argument of the express company that a practice like this would subject it to suits by revenue agents in every county in the state in which it operated, the court said:

"The county court first assuming would have jurisdiction, and an action in that court would be a bar to any action in any other county court in the state as to that particular franchise for the years named in the statement filed. This construction of the statutes obviates the appellee's fears of fragmentary taxation, as the clerk of the court having jurisdiction of the case is required to certify the value of the franchise, as fixed by the court, to the Auditor of the state, he being chairman of the Board of Valuation and Assessment, and this board will apportion this assessment among the different counties in the state through which the franchise is operated."

As fully supporting the views I have expressed, that intangible property which a corporation omits to list in its report may be assessed as omitted property by the state at the suit of a revenue agent, I call attention to the case of the Com. v. Louisville Gas Co., 135 Ky. 324. That case, as stated in the opinion, was "A proceeding begun in the Jefferson county court to assess as omitted property certain stocks and bonds of another corporation owned by appellee gas company." The court held that the stocks and bonds sought to be assessed as omitted property had not, in fact, been omitted, and therefore affirmed the judgment of the lower court dismissing the revenue agent's suit; but in the course of the opinion the court fully recognized the right of a revenue agent to have

omitted property assessed, and held that when a corporation omitted items of property from its report it was an omission and not an under-valuation. In answer to the argument of counsel for the gas company, who insisted that it was not omitted property, the court said:

"Appellee contends that the action of the State Board of Valuation and Assessment in valuing a franchise for taxation is one act, not severable, and whether it considered all the evidence bearing upon the value of the franchise, or omitted to take some evidence that it might have required, cannot be reviewed by the courts in a proceeding to list omitted property; that the thing being now considered, i. e., whether the bonds were included in the gas company's report and the board's estimate, might be omitted evidence, but not omitted property, as there was no warrant for the board to assess the bonds in any event as property. This franchise tax is new. It is substitutional as a method of valuation only. Its like existed under the old statutes of this state where choses in action and the like were grouped as 'miscellany.' Then a taxpayer could have reported, say $10,-000.00 in 'miscellany,' which was supposed to embrace all his notes and accounts; but suppose he had notes to the amount, and solvent, of $20,000.00, not an erroneous valuation of those reported as $10,000.00, but $10,000.00 in addition. It would scarcely have been contended that the failure to list C. D.'s notes for $10,000.00 was merged in the listing of the A. B. notes."

And in further holding that the suit by the revenue agent to assess the stocks and bonds as omitted property could be maintained, said:

"The legislature could have required corporations to pay on each item of their intangible property, on their notes, bonds, accounts, capital stock, and so forth, in detail; but it allowed all these properties to be grouped for purposes of taxation, as a more convenient and just method of assessing. It was not contemplated that the privilege thus accorded the taxpayer was to be a shield for his neglect or fraud in omitting a material part of his property. If, for example, a railroad corporation owns two different lines of railroad in this state, but reports only one of them, and the earnings of but one, it must be apparent that the failure to report the other is something more than an omission of evidence. It would be an omission of property. It is not true that the bonds in appellee's hands are not taxable. They are. The con-

stitution prohibits their exemption (section 174). But the manner of assessing them is to have them reported to the state board, and there valued as a part of the owner's 'franchise.' When they are omitted, property liable to taxation is omitted. It may be brought in and assessed as omitted property under section 4260 of the Kentucky Statutes.''

I submit that this case, which it is said in the opinion is not applicable, is directly in point and should have been either overruled or followed.

Nor have I any doubt that the Board of Valuation and Assessment may reconsider its action in making an assessment for the purpose of correcting a fraud practiced on it by the corporation in the omission in its report of valuable items of property. It cannot for a moment be tolerated that a corporation by intentionally omitting valuable items of property from its report can escape taxation on this property, when its fraudulent omission has been discovered and suit to correct it has been brought within five years from the date of the original assessment by the board.

It is true, as stated in numerous opinions of this court, many of which are reviewed in the case of the Kentucky Heating Co. v. City of Louisville, 174 Ky. 142., that the finding of the board, when all the facts are before it, and in the absence of fraud or mistake, is conclusive, but it is equally true, and was so held in the cases referred to in that opinion, that when the board, through fraud or mistake, is led to make an erroneous assessment, this fraud or mistake may be corrected and a just assessment made, no matter whether the mistake is made or the fraud practiced by the board or by the corporation.

The true rule is that the fraud or mistake, whichever it may be, can be corrected at the instance of the state or the corporation, in order that justice may be done to the state and the corporation. The action of these assessing boards is open to review when it is made to appear that by fraud or mistake injustice has been done either to the state or corporation. When injustice has been done to the corporation by the fraud or mistake of the board, it may bring a suit and have the error corrected, as was held in Hager, Auditor, v. American Surety Co., 121 Ky. 791; and so when an injustice has been done to the state by the fraud or mistake of the corporation, the state should be allowed to bring a suit through its revenue agent to have this fraud or mistake corrected. The same

principles of law should be applied to the state and the corporation. The same rules of equity and justice that would remedy a wrong committed by the state against the corporation should remedy a wrong committed by the corporation against the state. This is the rule applied to the individual taxpayer who omits to list his property. Why should it not be applied to the corporation?

This court has held in a number of cases that the action of the board in making a final assesment cannot be reviewed in the absence of fraud or mistake. Coulter, Auditor, v. Louisville Bridge Co., 114 Ky. 42; First National Bank v. Hopkinsville, 128 Ky. 383; Southern Pacific Company v. Com., 134 Ky. 410; Com. v. Southern Pacific Company, 144 Ky. 803. But in no case has it ever ruled that the action of the board was final or conclusive when it was shown that its decision was influenced by either fraud or mistake on the part of the board or the corporation. Nor can any sound reason be advanced why the action of the board should not be opened up when it is made to appear that through fraud or mistake on the part of the corporation or the board an erroneous assessment, either too high or too low, was made. Why should the action of the Board of Valuation and Assessment be more conclusive than the final judgment of a court, when it is settled law that judgments may be opened up for mistake or fraud practiced by the party who has benefited by the mistake or fraud?

In holding that the action of the state board cannot be opened up and reviewed in a state of case in which it is made to appear in the suit of a revenue agent that the corporation made a false and fraudulent report for the purpose of escaping the payment of taxes that it would have been compelled to pay if a correct report had been made, the opinion sets down a rule out of line with numerous opinions of this court and directly in conflict with the principles announced in the Louisville Gas Company case, *supra*.

I further insist that it leaves the state helpless to correct frauds that may be practiced by corporations on its assessing officers, because the only remedy the state has the opinion denies. It gives to the corporation the right to obtain relief from an excessive assessment made through fraud or mistake on the part of the board, but denies to the state any relief from an inadequate assessment procured through the fraud or mistake of the corporation.

Heretofore the law applicable to the assessment of omitted property had been made plain by the statute I have quoted, and the practice had been made plain by the opinions to which I have referred. The officers charged with the duty of having assessed property omitted by corporations knew exactly what procedure to follow. But now the statute has been set aside and the opinions ignored, or rather overruled by implication; and so when it is sought to assess the omitted property of these franchise corporations no one will know who can sue or how to proceed. Uncertainty, confusion and doubt will take the place of what was once certainty in the law and simplicity in the practice. The inevitable result of this radical departure from the paths that had been laid out by the legislature and this court will be much new, expensive and troublesome litigation in an effort to find a way by which the frauds that corporations may practice in making their reports may be corrected. I submit that no sound or other reason has been or can be given to authorize or justify this abandonment of settled rules of law and practice.

To sum up, my views are: (1) That when the board, on a full and fair report, makes an assessment, its decision is final and cannot be reviewed at the suit of the state or the corporation on the ground that there has been either an under-valuation or an over-valuation, unless the action taken is the result of fraud or mistake on the part of the board; (2) The action of the board in all cases is subject to review by both the state and the corporation when it is made to appear by clear and convincing evidence that its decision was the result of either fraud or mistake; (3) When a corporation omits from its report any item of property that it should have reported, this omitted item may be assessed at the suit of a revenue agent in the county court, and in such suit the burden is on the Commonwealth to show that the corporation owned the property omitted, and its value, and upon the corporation to show that notwithstanding the omission the board considered the omitted item in making its valuation in the original assessment: (4) When an omitted item has been assessed by the county court, and the assessment has been certified to the board, it is the duty of the board to reassemble and go over its former assessment and make such reassessment as in its judgment may be necessary to include the items found to be omitted; (5) No action can be brought by the Common-

wealth to assess omitted items of property after the expiration of five years from the date of the original assessment by the board.